[Crim. No. 1363. Fifth Dist. May 30, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
MARION A. CARR, Defendant and Appellant.

## COUNSEL

Mark Franich, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Edward W. Bergtholdt, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GARGANO, J.**—After jury trial appellant, Marion A. Carr, was convicted of assault with a deadly weapon while he was incarcerated in state prison for a term less than life in violation of Penal Code section 4501. He was sentenced to state prison for the term prescribed by law, the sentence to run consecutively with any other sentence he was then serving. This appeal followed.

Appellant was an inmate at the Sierra Conservation Center in Tuolumne County. On December 2, 1971, appellant and Ronald Smith, a fellow-inmate at the center, got into a fight and Smith kicked appellant in the teeth. Later Smith apologized and sought amends, but Carr said that he would not forget the incident.

On December 15, 1971, at about 8:15 a.m., Ronald Smith was stabbed repeatedly in the chest, back and arms as he lay asleep fully clothed on his bunk in Dorm 42; the attacker was a black man of slender build, similar physically to appellant Carr. Smith knocked the assailant's sunglasses off, managed to arm himself with a chair and chased the man from the room.

At appellant's trial Joseph Marcelino, the only other inmate who was in the dormitory at the time of the stabbing, testified for the People. Marcelino said that he was asleep on a bunk when he was awakened by a loud noise and saw Smith and Carr, both of whom he knew, fighting. Marcelino watched as Smith chased Carr out of the room with a chair; Smith was bleeding heavily and moaning. The witness testified that he helped Smith to his bunk and applied a tourniquet to the wounded man's arm. Then he notified the prison officials.

During the cross-examination of Joseph Marcelino by defense counsel, the witness was asked, "What are you in prison for?" Marcelino answered, "I don't think I have to answer that do I?" Persisting, defense counsel inquired, "Is it murder?" At that point the prosecutor interrupted, saying, "Well, Your Honor, I don't think he does." The court replied, "I don't either. Sustain the objection." It is this colloquy upon which appellant's appeal is predicated.

Appellant concedes that the only possible purpose for his trial counsel's questions was to show that the witness had been convicted of a murder charge in order to impeach him. Appellant insists that he was entitled to impeach Marcelino in this manner under the authority of Evidence Code section 788. The section states that "[f]or the purpose of attacking the

credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony. . . ."

Prior to the filing of the Supreme Court's opinion in *People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the decisions of the courts of appeal consistently held that under Evidence Code section 788, the trial judge had no discretion to exclude evidence of a prior felony conviction to impeach the defendant in a criminal action if the defendant took the stand and testified. In the *Beagle* case, the court addressed itself to the relationship between Evidence Code sections 788 and 352 and concluded that when the sections are read together "they clearly provide discretion to the trial judge to exclude evidence of prior felony convictions. . . ." The court declined to establish rigid standards but suggested that the guidelines delineated in *Gordon* v. *United States,* 383 F.2d 936, 940, be followed by trial courts. In that case the United States Court of Appeal stated: "In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence . . . generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; . . . The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness.

"A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; . . .

". . . One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions. Even though a judge might find that the prior convictions are relevant to credibility and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment."

Appellant does not take issue with the *Beagle* opinion. If we understand him correctly, he would, for all practical purposes, have us restrict the rationale of that opinion to a defendant who testifies on his own behalf in a criminal trial. Appellant suggests that no prejudice could possibly result from the disclosure of a prior felony conviction, such as murder, where the witness to be impeached is a witness for the prosecution. He suggests further that if the *Beagle* rule is applied to prosecution witnesses, it would contravene a defendant's Sixth Amendment right to confront and cross-examine witnesses who testify against him.

■ The latitude of a trial judge to exclude prior felony convictions for impeachment purposes is, and rightly should be, greater as to defendants than for other witnesses; there is always a danger that if the jurors learn that the defendant suffered a prior felony conviction they will convict him merely because they believe that he is an evil person. ■ Nonetheless, appellant's suggestion that the *Beagle* rule be restricted to defendants in criminal actions is not realistic. Section 788 of the Evidence Code applies to any witness and to criminal and civil trials; it is this section that the Supreme Court said must be read together with section 352 of the Evidence Code granting a trial judge discretion to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, . . ." It would be anomalous to hold that a trial judge has no discretion to exclude evidence that a witness, other than a defendant in a criminal action, was convicted of a felony even though the felony was, for example, an aggravated assault committed many years earlier when the witness was young and immature.

■ While the right of cross-examination is a fundamental constitutional right, it is not without limitation; it is subject to the legislative prerogative to adopt rules of evidence governing the conduct of trials, particularly where the rules are related to relevance. ■ In California the impeachment of witnesses with evidence of prior convictions is a statutory right and, as at common law, is restricted to felonies. As a defendant in a criminal action may not impeach a witness by showing that he committed a misdemeanor although the misdemeanor is of the kind that would impugn the witness' veracity, so a defendant does not have the unqualified right to impeach a witness with evidence of a prior felony conviction if, under modern standards, the trial court determines that the nature of the felony has no bearing whatever on credibility and that the "probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, . . ."

█ We are reluctant to hold that the trial judge abused his discretion. If defense counsel attempted to impeach Marcelino by showing that he had committed a felony and that the felony was murder, the questions he asked were not in proper form. Furthermore, the court's ruling did not result in a miscarriage of justice. The jury obviously knew that Marcelino had been convicted of a crime; if Marcelino had been permitted to answer defense counsel's questions, presumably, his answers would have shown only that the nature of the crime was murder; trial counsel did not pursue the matter further. As the court said in *Gordon* v. *United States,* 383 F.2d 936, 940, "[a]cts of violence . . . generally have little or no direct bearing on honesty and veracity."

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 25, 1973.