[Crim. No. 27701. Second Dist., Div. Four. Sept. 16, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
HERMAN BANKS, JR., et al., Defendants and Appellants.

**COUNSEL**

Roblin J. Williamson and Joseph E. Gerbac, under appointments by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Defendants Banks and Ashley were convicted of burglary (Pen. Code, § 459), following a court trial, a jury trial having been waived. They are appealing from the judgments.[1]

Evidence presented at trial established that, on September 4, 1974, Scott Lachenmyer was working as a truck driver for the Man's Shop, located in the Carson Mall, City of Carson. At 11:30 a.m., while he was loading merchandise onto a truck which was parked to the rear of the shop, he saw two men who were watching him and acting as though they were groundskeepers. The two men continually watched Lachenmyer during the half-hour he was loading the truck with merchandise that came from the front or side storeroom of the shop. The men were

---

[1]Appellant Banks is appealing from "the judgment and sentence." The sentence is not separately appealable. (Pen. Code, § 1237.)

crouched over picking up trash and picking weeds in an area containing shrubbery. This area was located directly behind the truck. Lachenmyer did not put any merchandise from the back storeroom into the truck. He left the shop's rear door propped open during the loading process.

About noon, Kaye Thomas and David Bissell were in the vicinity of the rear of the Man's Shop looking for discarded cardboard boxes when they observed a lot of men's clothing in two large trash bins. There were a lot of cotton embroidered jean outfits in one bin and multicolored shirts in another. Defendants came down to the trash bins from a raised planter and one stated to Thomas and Bissell that "[t]hese are our clothes. You know, leave them alone." When asked where they got the clothes, one of the defendants pointed to the door of the Man's Shop and said: "We got them in there." At one point in the conversation, one of the defendants said: "Leave us alone. Don't tell anybody. Go down there. Meet us down at the end." In addition, one of the defendants told Thomas and Bissell that they had better get on their way. Defendant Ashley also told Bissell that if Bissell kept his cool and met Ashley down at the end of the mall, Bissell could get some of the stuff.

The testimony also indicated that Bissell had seen defendant Banks between the rear door of the Man's Shop and one of the trash bins with four or five shirts over his arm. Bissell and Thomas drove to the end of the mall in Bissell's truck. Bissell could see defendants and a third man throwing clothing into the trunk of a Cadillac as fast as they could. After Bissell and Thomas waited about five minutes, the Cadillac pulled up to the passenger side of Bissell's truck. A shirt which Thomas had seen in one of the trash bins was thrown from the Cadillac to Thomas and Bissell with the remark that they had better keep their mouths shut or they were going to be in a lot of trouble. Defendants were both in the back seat of the Cadillac. Bissell observed defendant Ashley sitting on a pile of clothing—the same clothing Bissell had observed in the trash bins.

Thomas and Bissell returned to the Man's Shop, gave the shirt to Lachenmyer and asked him if the shirt belonged to him. When he said it did, they said, "[w]ell, these guys gave it to us, and we want to bring it back. We don't have any use for it." Lachenmyer recognized the shirt as part of the store's merchandise. He looked in the rear storeroom and noted that quite a lot of the merchandise that had been in there was missing. Two of the racks were half empty. He apprised the manager, James Condon, of the situation. Condon checked the rear storeroom and ascertained that about 100 shirts and 25 to 30 leisure suits were missing.

By way of defense, defendant Ashley testified that he was not present at the scene of the alleged burglary. Defendant Banks testified that he and two other friends found the clothes in the trash bins. He denied having entered the Man's Shop and removed merchandise.

Both defendants seek a reversal of their judgments of convictions on the ground that the evidence is insufficient to support the convictions. The contention is clearly nonmeritorious.

■ Viewed in the light most favorable to the judgments, as required by the usual rule governing appellate review, there is sufficient circumstantial evidence to sustain the trier of fact's determination that defendants entered the building occupied by the Man's Shop in the Carson Mall on September 4, 1974, for the purpose of stealing merchandise, and did in fact remove merchandise. ". . . 'In a prosecution for burglary the evidence on which a defendant is convicted may be purely circumstantial and if substantial, as in the present case, is sufficient to support the judgment of guilty.' " (*People* v. *Jordan* (1962) 204 Cal.App.2d 782, 786 [22 Cal.Rptr. 731].) The instant case falls within the rule that "[p]ossession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]" (*People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].)

Defendant Banks advances the additional contention that the trial court erred in allowing the prosecution to seek to impeach him as a witness by permitting inquiry relative to a prior felony conviction without requiring compliance with standards established by Evidence Code section 788 and *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]. We likewise find this contention lacking in merit.

Defendant Banks testified in his own defense. During cross-examination, the prosecutor asked him if he had ever been convicted of a felony. Banks replied in the affirmative. The prosecutor then asked the date. Defense counsel objected, stating that the felony did not show moral turpitude and that it was highly prejudicial, relying upon the *Beagle* case.

The court asked the prosecutor if she had evidence that defendant had been convicted of a felony and if she knew what kind of felony. After

stating that it was her understanding that proceedings were suspended on a charge of robbery and kidnaping in 1972 and that the superior court file in this case (No. 286044) was not available because it was in use in another department, the trial court ruled that the felony of robbery would be admissible to impeach defendant under the *Beagle* standards since the conviction was not remote nor that prejudicial, because robbery is not similar to the charged offense of burglary.

Almost immediately the prosecutor corrected herself and stated that appellant Banks had actually pled guilty to 496(f), receiving stolen property, in the 1972 case. The court then indicated that his ruling would remain the same.

■ Banks attacks the trial court's ruling regarding the felony-conviction impeachment evidence because the trial judge did not require the prosecution to produce the record of the felony conviction as required by Evidence Code section 788 but simply accepted the prosecutor's statement that Banks had been convicted in 1972, by a plea of guilty, of the felony of receiving stolen property. Although the prosecutor's reference to Penal Code section 496(f) is in error since the offense of receiving stolen property is set forth in Penal Code section 496, subdivision 1, the question presented is whether the trial court's reliance on the prosecutor's statements was error and prejudicial to defendant Banks.

It is to be noted that Banks had already testified that he had been convicted of a felony. In addition, the trial court granted to counsel for Banks the right to pursue the matter further, but counsel chose not to do so. We recognize that Evidence Code section 788 provides that the fact of a felony conviction for impeachment of a witness may be established by either (1) examination of the witness or (2) the record of the judgment of conviction. Since defendant Banks had testified to the fact of having been previously convicted of a felony, we see no harmful violation of Evidence Code section 788 in the trial court's acceptance of the prosecutor's statement—admittedly not evidence—that the felony involved was that of receiving stolen property. If Banks had testified erroneously as to having been convicted of a felony, his counsel had every opportunity to correct the mistake.

■ The next contention of Banks with respect to the matter of felony impeachment is that evidence of defendant's prior felony conviction ought to have been excluded by the *Beagle* rules.

*Beagle,* of course, constitutes an interpretation of Evidence Code section 352. *Beagle* creates guidelines for the trial judge to exercise discretion and exclude evidence of a defendant's felony conviction when offered to impeach him as a witness if the probative value of the evidence is substantially outweighed by the danger of undue prejudice to defendant. A failure of a trial judge to follow the *Beagle* guidelines and exclude proffered evidence of felony convictions to attack a defendant's credibility as a witness may result in reversible error. (*People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43]; *People* v. *Roberts* (1976) 57 Cal.App.3d 782 [129 Cal.Rptr. 529].)

Under the principles set forth in *Beagle, Antick* and *Rist,* certain factors point toward exclusion of the impeachment evidence and certain factors point toward admissibility. A felony offense that involves character traits of dishonesty or untruthfulness point toward substantial probative value and admissibility because these are the most relevant character traits to attack credibility of a witness. (See Evid. Code, § 786.) For example, the felony of receiving stolen property involves the character trait of dishonesty. Conviction of this felony would thus point toward admissibility. A felony conviction *not* remote in time with reference to the date of the charged offense has more probative value for impeachment than one that is remote in time. In the case before us, a felony conviction in 1972 of receiving stolen property is not remote in time with respect to an offense allegedly committed in 1974, concerns the character trait of dishonesty, and thus points toward admissibility.

The most serious element pointing toward exclusion is that of a felony conviction *similar* to the offense charged. "A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged." (*Rist, supra,* 16 Cal.3d 211, at p. 219.) This statement from *Rist* epitomizes the manifest danger to a defendant from evidence of a felony conviction introduced to attack his credibility. It is this danger of misuse by the jury of the evidence of a felony conviction, offered to impeach a criminal defendant as a witness, that requires the trial judge to exercise sound discretion under Evidence Code section 352 in making a determination whether to admit or exclude the proffered felony-conviction evidence in the face of a defendant's objection based on *Beagle* and Evidence Code section 352. The real key to sound judicial discretion is that " '[i]t imports the exercise of discriminating judgment

within the bounds of reason.' " (*In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819].)

In the case before us, this factor of similarity between the felony conviction (receiving stolen property), sought to be used to impeach defendant Banks as a witness, and the crime charged (burglary with intent to commit theft), together with the lack of remoteness in time between the two offenses, would point toward exclusion of the proffered evidence as the proper exercise of judicial discretion, in light of *Beagle, Antick* and *Rist.*

Here, however, we have countervailing factors. One factor is that the felony conviction of receiving stolen property has substantial relevancy and probative value to impeach a witness because the offense pertains to the impeachment trait of *dishonesty.* A second countervailing factor is that we are *not* dealing with a *jury* trial but with a *court* trial.

It seems clear that the *Beagle* guidelines are intended to apply more rigidly in the trial situation (1) involving a *jury trial,* and (2) in which the felony-conviction evidence is introduced to impeach a *criminal defendant as a witness. Beagle, Antick* and *Rist* emphasize the first trial situation—*a jury trial*—in stating that the danger of undue prejudice lies especially in the fact that "[a] jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged." (*Rist, supra,* 16 Cal.3d 211, at p. 219.)

Emphasis on the second trial situation—*a criminal defendant as a witness*—is set forth in the statement from *Rist* that "[i]n *People v. Beagle, supra,* 6 Cal.3d 441 (see also *People v. Antick* (1975) 15 Cal.3d 79, 97-99 [123 Cal.Rptr. 475, 539 P.2d 43]), we considered the interaction of Evidence Code sections 352 and 788 as they relate to prior felony convictions offered to impeach a witness, *especially when the witness is the defendant in a criminal trial.*" (*Rist, supra,* 16 Cal.3d 211, at p. 218.) (Fn. omitted; italics added.)

To be sure that there would be little misunderstanding of the scope of its holding, *Rist* expanded on the limitations intended by stating in a footnote: "We emphasize that our discussion herein is limited to the use of prior felony convictions to impeach the credibility of a criminal defendant, and does not extend to other, permissible uses of a

defendant's prior convictions (e.g., as proof of an element of the presently charged offense (Evid. Code, § 1101, subd. (b)), or by way of good-faith cross-examination of witnesses who have testified regarding the defendant's good character (*People* v. *Wagner* (1975) 13 Cal.3d 612, 619 [119 Cal.Rptr. 457, 532 P.2d 105]; *People* v. *Wrigley* (1968) 69 Cal.2d 149, 166 [70 Cal.Rptr. 116, 443 P.2d 580]). Moreover, the views we now express pertain only to the introduction of prior felony convictions to impeach a witness who is the defendant in a criminal prosecution: we are not herein concerned with the use of prior convictions to impeach other witnesses in criminal or civil proceedings. [¶] To the extent that they conflict with the views expressed in this opinion we disapprove *People* v. *Hayden, supra*, 30 Cal.App.3d 446 [106 Cal.Rptr. 348], *People* v. *Delgado, supra*, 32 Cal.App.3d 242 [108 Cal.Rptr. 399] and their progeny." (*Rist, supra*, 16 Cal.3d 211, at p. 222, fn. 10.)

We believe that a *court trial* falls into the category of situations *not* intended to be *rigidly* controlled by the *Beagle, Antick* and *Rist* guidelines. Even though a defendant is the witness involved, the trial judge in a court trial must of necessity be informed of the felony conviction evidence in order to rule on its admissibility. In addition, we believe that there is far less danger that a trial judge will use the felony-impeachment evidence to convict a defendant rather than limiting its use to the proper scope of its bearing upon the credibility of defendant as a witness. Hence, we conclude that, in the case at bench, there was no abuse of discretion under Evidence Code section 352 or under the *Beagle* guidelines in the trial court's ruling permitting the felony-impeachment evidence to be introduced to attack the credibility of defendant Banks.

The fact that *Beagle, Antick* and *Rist* emphasize that the guidelines set forth in these cases for determining admissibility of evidence of felony convictions, offered to attack the credibility of a witness, are intended to have special application in the trial situation in which (1) the jury is the finder of fact and (2) the evidence is offered to attack the credibility of a criminal defendant as a witness, must *not* be interpreted to mean that Evidence Code section 352 does not confer upon trial judges a discretion to exclude evidence of felony convictions offered to attack the credibility of a witness in *other* trial situations. These other trial situations are those in which (1) the witness is a defendant in a nonjury criminal court trial, or (2) the witness is a nonparty witness for the prosecution or defense in a criminal jury or

nonjury trial, or (3) the witness is either a party or nonparty witness in a civil action.

Evidence Code section 352[2] is a viable evidentiary principle in all of these situations not *specifically* covered by *Beagle, Antick* and *Rist.* We interpret *Beagle, Antick* and *Rist* to mean that Evidence Code section 352 and the *Beagle* guidelines are *not* to be construed to require strict adherence on the part of the trial court to these guidelines in the *non-Beagle* situations in order to constitute the exercise of sound judicial discretion or to avoid an abuse of discretionary powers conferred by Evidence Code section 352.

To support our view of the meaning to be attributed to *Beagle, Antick* and *Rist* in situations other than felony impeachment evidence offered against a criminal defendant as a witness in a jury trial, we rely in part on *People* v. *Carr* (1973) 32 Cal.App.3d 700 [108 Cal.Rptr. 216]. In *Carr,* it was held that a trial court acted within the discretion conferred by Evidence Code section 352 and *Beagle* in precluding a criminal defendant in a jury trial from attacking the credibility of a prosecution witness by means of evidence of a felony conviction. In *Carr,* the defendant was charged with an assault with a deadly weapon while incarcerated in state prison for a term less than life. Evidence of the felony conviction sought to be introduced by the defendant to impeach a *prosecution* witness was that of the felony of murder. *Carr* held that the exclusionary rule of evidence set forth in Evidence Code section 352 and in *Beagle* did not violate the defendant's Sixth Amendment constitutional right to confront and cross-examine witnesses against him.

The application of Evidence Code section 352 to evidence of felony convictions offered against a prosecution witness takes on especial significance in view of *Hill* v. *Superior Court* (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353]. *Hill* held that a criminal defendant, upon a proper showing, is entitled by way of pretrial discovery to obtain from the prosecution the felony "rap" sheet of a prosecution witness since evidence of a felony conviction may be used by a defendant to impeach a prosecution witness. The proper showing is that of (1) specifying the material sought, and (2) providing a plausible basis that the material sought will assist in preparing his defense. The *Hill* case makes clear,

---

[2]Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

however, that the trial judge is *not* required to grant discovery of the felony conviction record or "rap" sheet of every prosecution witness in every criminal case. The trial judge may consider such factors as (1) the timeliness of the motion for discovery, and (2) the importance of the particular witness involved.

It is significant that *Rist* cited the *Carr* case but did not express any disapproval of the *Carr* holding. *Carr* was cited by *Rist,* along with *Antick, People* v. *Obie* (1974) 41 Cal.App.3d 744 [116 Cal.Rptr. 283], and *People* v. *Coleman* (1973) 32 Cal.App.3d 853 [108 Cal.Rptr. 573] in connection with the statement: "*Beagle* requires that the trial court, and the appellate court when a challenge is made to the trial court's exercise of discretion, consider *all* those pertinent factors bearing on the question whether the probative value of evidence of a prior conviction as it bears on credibility is outweighed by the risk of undue prejudice under the unique facts of the particular case." (*Rist, supra,* 16 Cal.3d 211, at p. 221.) (Italics in original.)

The judgments appealed from are affirmed.

Kingsley, Acting P. J., and Dunn, J., concurred.

The petition of appellant Banks for a hearing by the Supreme Court was denied November 24, 1976.