[Crim. No. 29690. Second Dist., Div. Four. Apr. 17, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
THEODORE STEVENSON, Defendant and Appellant.

**COUNSEL**

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Richard A. Curtis, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., Paul C. Ament and Edward T. Fogel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BIGELOW, J.**\*—In a jury trial, defendant was convicted as follows: Guilty on count I, which charged assault with a deadly weapon on Samuel Willis with intent to commit murder, in violation of section 217 of the Penal Code; on count II, which charged an assault with a deadly weapon on William Reid, guilty of possession of a deadly weapon with intent to commit an assault on William Reid, in violation of section 467 of the Penal Code, a lesser and necessarily included offense within that charged. An allegation of the use of a firearm charged in count II was found to be true. Before the jury trial defendant admitted as true, two prior felony convictions as alleged in the information. Defendant was sentenced to state prison on count I and to county jail on count II, the sentences to run concurrently. In sentencing, the trial court's corrected minute order recites that it "finds that two priors were admitted and are considered for sentence and judgment" and that "the use allegation as to count two has been found to be true." We reverse.

Defendant's contentions on this appeal are procedural in nature. Therefore, we limit our recital of the facts to those necessary to understanding our holdings.

### SHOOTING AND ASSAULT INCIDENTS

The case for the People was as follows: Just past midnight, between 12:25 a.m. and 12:45 a.m. on October 4, 1975, defendant and Willis had a dispute over defendant's claim that Willis had misappropriated a television set. Defendant fired three shots from his pistol at Willis, hitting him twice. Defendant, a friend named Parker and William and Connie Reid all drove away from the scene in the same car. During the drive, defendant pointed his pistol at William Reid and told him not to talk to the police about what had just happened.

---

\*Assigned by the Chairperson of the Judicial Council.

## EVIDENCE OF DEFENDANT'S
## DRINKING AND INTOXICATION

Ruby Briggs, called as a witness by the People, testified on cross-examination as to defendant's drinking scotch whiskey and its intoxicating effect on him before and immediately after the shooting and assault incidents just described.

She testified that defendant, Parker and William and Connie Reid first came to her apartment just before midnight, about 11:40 p.m. October 3, 1975. They stayed about 45 minutes. They brought with them an unopened fifth of Johnny Walker Red Label scotch whiskey. All five persons had some scotch out of this bottle, which was half empty when they left about 12:25 a.m. Defendant was drinking from a six-ounce glass which was three to four inches tall. She saw defendant fill his glass three times or more. She saw defendant drink "quite a bit." When defendant, Parker and the Reids left they were all jolly.

Fifteen to twenty minutes later, defendant, Parker and Connie Reid came back to Ruby Briggs' apartment. The above described shooting and assault incidents had taken place during this short interval of time.

Ruby Briggs testified that defendant asked for the half empty bottle of scotch whiskey which he had left there at her apartment a few minutes earlier and poured himself a good stiff drink. She noticed when he first came back to her apartment that defendant "looked like he had been drinking" and also looked sort of "like he was kind of under the influence of a little alcohol."

## JURY INSTRUCTIONS ON DIMINISHED
## CAPACITY DUE TO INTOXICATION

The defendant requested CALJIC No. 8.77[1] (rev. ed. 1976) (diminished capacity—ability to premeditate, deliberate, harbor malice, or

---

[1]CALJIC instruction No. 8.77 reads:

"If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, mental defect, intoxication, or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of murder and voluntary manslaughter.

"Thus, if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he did, maturely and meaningfully, premeditate, deliberate, and reflect upon the gravity of his contemplated act, or form an

intend to kill), which the trial court refused to give. Instead, the trial court gave CALJIC No. 4.21[2] (voluntary intoxication—when relevant to specific intent) modifying it by limiting its application to the charge in count I "assault with a deadly weapon with the intent to commit murder" and further limiting its application to the specific intent to "commit murder." The trial court then also gave CALJIC No. 4.20 (voluntary intoxication—not a defense) as to the offense charged in count II (assault with a deadly weapon upon alleged victim William Reid). Also given was CALJIC No. 17:10 (conviction of lesser included offense) which listed "having possession of deadly weapons [sic] with attempt [sic] to commit assault, in violation of section 467, Penal Code" as one of the lesser offenses included in counts I and II.

The instructions pertinent to this appeal which were given defining the crimes charged were CALJIC Nos. 9.01 (assault with intent to commit murder), 9.03 (assault with a deadly weapon) and an adequate special instruction defining possession of a deadly weapon with intent to assault another (Pen. Code, § 467), a misdemeanor. In addition, CALJIC Nos. 8.10 (murder—defined) and 8.11 ("malice aforethought"—defined) were given.

intent to kill, you cannot find him guilty of a wilful, deliberate and premeditated murder of the first degree.

"Also, if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he was able to form the mental states constituting either express or implied malice aforethought, you cannot find him guilty of murder of either the first or second degree.

"[If you have a reasonable doubt [1] whether he was able to form an intention unlawfully to kill a human being, or [2] whether he was aware of the duty imposed on him not to commit acts which involve the risk of grave injury or death, or [3] whether he did act despite that awareness, you cannot find that he harbored express malice.]

"[Further, if you have a reasonable doubt [1] whether his acts were done for a base, anti-social purpose, or [2] whether he was aware of the duty imposed on him not to commit acts which involve the risk of grave injury or death, or [3] whether he did act despite that awareness, you cannot find that he harbored implied malice.]

"Furthermore, if you find that as a result of mental illness, mental defect, or intoxication, his mental capacity was diminished to the extent that he neither harbored malice aforethought nor had an intent to kill at the time the alleged crime was committed, you cannot find him guilty of either murder or voluntary manslaughter."

[2]CALJIC instruction No. 4.21 reads:

"In the crime of . . . of which the defendant is accused [in Count . . . of the information], a necessary element is the existence in the mind of the defendant of the specific intent to . . . .

"If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent.

"If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent."

The defendant contends that the trial court should have given a modified version of CALJIC No. 8.77 as requested, and CALJIC No. 3.35[3] (diminished capacity to form specific mental state [*Wells-Gorshen* rule]) instead of CALJIC No. 4.21, all as to count I, and that CALJIC No. 4.20 (voluntary intoxication—not a defense) should not have been given as to the lesser included offense in count II of possession of a deadly weapon with intent to commit an assault (i.e., a specific intent crime) and instead should have given CALJIC No. 3.35, *supra*, on diminished capacity to form such specific intent. We agree. Adding to these errors CALJIC No. 3.34[4] (how intent is shown) was given in full. Its second paragraph tells the jury that they must assume that the defendant was of sound mind at the time of his alleged conduct. The "use note" to CALJIC No. 3.34 warns not to give the second paragraph in a specific intent crime if there is evidence of diminished capacity and cites the reader to CALJIC Nos. 3.35 and 8.77.

SUFFICIENCY OF EVIDENCE OF
INTOXICATION TO REQUIRE DIMINISHED
CAPACITY INSTRUCTIONS

"It is now well established that the defense of diminished capacity as a result of voluntary intoxication ... is relevant to prove defendant was incapable of forming the specific intent to commit the crime charged. (See *People* v. *Conley* (1966) 64 Cal.2d 310, 316-319 ....)" (*People* v. *Spaniel* (1968) 262 Cal.App.2d 878, 887 [69 Cal.Rptr. 202].)

There must, of course, be a threshold determination by the trial court that there is sufficient evidence of intoxication to require the giving

---

[3]CALJIC instruction No. 3.35 reads: "When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged. [¶] If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state, you must give defendant the benefit of that doubt and find that he did not have such specific intent or mental state."

[4]CALJIC instruction No. 3.34 reads: "The intent with which an act is done is shown by the circumstances attending the act, the manner in which it is done, the means used, and the soundness of mind and discretion of the person committing the act. [¶] [For the purposes of the case on trial, you must assume that the defendant was of sound mind at the time of his alleged conduct which, it is charged, constituted the crime described in the information.]"

of diminished capacity instructions. (*People* v. *Poddar* (1974) 10 Cal.3d 750 [111 Cal.Rptr. 910, 518 P.2d 342].) "It has been held that merely showing that the defendant consumed some alcohol prior to commission of the crime without showing the effect of the alcohol on him is not sufficient to warrant an instruction on diminished capacity [even when requested by the defendant]. (*People* v. *Bandhauer*, 66 Cal.2d 524, 528 . . . .)" (*People* v. *Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513] (consumption of marijuana).) It has even been held that "[t]he fact that a defendant has been drinking, without evidence that he became intoxicated thereby, provides no basis for an instruction on intoxication." (*People* v. *Mills* (1977) 73 Cal.App.3d 539, 544 [140 Cal.Rptr. 803] (holding no *sua sponte* duty on trial court re "proverbial 'couple of beers' ").)

When such an instruction is requested by the defendant, the trial judge's task is quite different from that required for *sua sponte* instructions. By the defendant requesting the instruction, the court knows that the defendant is relying on that defense. Its inquiry then focuses on the sufficiency of such evidence. ▮ "It is well settled that if the defendant requests an instruction it must be given if there is any evidence on that issue deserving of any consideration whatsoever . . . (see *People* v. *Tidwell*, 3 Cal.3d 82, 86 . . . ." (*People* v. *Vasquez* (1972) 29 Cal.App.3d 81, 88 [105 Cal.Rptr. 181].) Even where there is conflicting evidence on this issue, nevertheless the law requires that " '[h]owever *incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.*' " (Italics in original.) (*People* v. *Modesto* (1963) 59 Cal.2d 722, 729 [31 Cal.Rptr. 225, 382 P.2d 33], disapproved on another unrelated point in *People* v. *Morse* (1964) 60 Cal.2d 631, 648-649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810], but reaffirmed on this proposition in *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Vasquez, supra*, 29 Cal.App.3d 81.)

▮ The fact that the trial judge was of the opinion that the evidence of defendant's intoxication was deserving of consideration because he gave an instruction on voluntary intoxication, is entitled to some weight on appeal. (*People* v. *Vasquez, supra*, 29 Cal.App.3d 81; *People* v. *Bowen* (1971) 22 Cal.App.3d 267 [99 Cal.Rptr. 498].)

In the case of *People* v. *Vasquez, supra*, the evidence consisted of testimony of the defendant that he was "kind of high" and "kind of loaded." Conflicting and contradictory evidence came from other

witnesses. That court held that the defendant had introduced evidence of intoxication worthy of consideration as to the giving of instructions on diminished capacity due to voluntary intoxication. In the case at bar, the evidence of defendant's intoxication came from an independent witness called by the People to prove the commission of a separate and independent offense of a sexual nature. Ruby Briggs testified against the defendant on that charge, giving her testimony regarding defendant's intoxication during cross-examination. We hold that such evidence, upon defendant's request for the diminished capacity instruction, was sufficient to warrant the giving of proper, full and complete instructions thereon.

Such failure to so instruct on every material question presented by the evidence is error (see *People* v. *Tidwell* (1970) 3 Cal.3d 82, 86 [89 Cal.Rptr. 44, 473 P.2d 748]) and the error is prejudicial per se since appellant is thereby denied a jury trial on all the issues presented by the evidence. (*People* v. *Tidwell, supra*; *People* v. *Mosher* (1969) 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659].)

### MULTIPLE SPECIFIC INTENTS AND MENTAL STATES

 "Evidence of diminished capacity may negate the existence of a specific mental state essential to the commission of an offense [citation], including the existence of malice aforethought [citation]. . . . In short, in any situation where malice aforethought or any other specific mental state must be established in order to find a charged or included offense, evidence of diminished capacity may be used to negate its existence. When such evidence exists the accused is entitled to an instruction which clearly indicates the full effect which a finding of its existence may bear on a crucial mental element of the charged and included offenses. [Citations.]" (*People* v. *Poddar, supra,* 10 Cal.3d 750, 757-758.)

 In the crime of assault with intent to commit murder (Pen. Code, § 217) charged in count I, the specific intents and mental states involved are: (1) intent to commit murder; (2) intent to unlawfully kill a human being; and (3) the mental state of malice aforethought. The "murder" which defendant must intend, need only be murder of the second degree. (*People* v. *Bernard* (1946) 28 Cal.2d 207 [169 P.2d 636].) Therefore, defendant need not possess the specific mental state of deliberation and premeditation required for first degree murder and no instruction need

be given regarding the effect of diminished capacity due to voluntary intoxication on those two specific mental states.

■ Assault with intent to commit voluntary manslaughter in violation of Penal Code section 221 is a lesser included offense in the crime of assault with intent to commit murder. (*People* v. *Moles* (1970) 10 Cal.App.3d 611, 615 [89 Cal.Rptr. 226].) Therefore, modified versions of CALJIC No. 8.37 (manslaughter defined) and No. 8.41 (voluntary manslaughter—absence of malice due to diminished capacity) should be given. CALJIC No. 17.10 (conviction of lesser included offense) should be modified to include assault with intent to commit voluntary manslaughter as a lesser included offense to assault with intent to commit murder in count I.

■ In the trial court's giving of CALJIC No. 4.21, it erroneously limited the application of diminished capacity due to voluntary intoxication to the single specific intent to "commit murder." Instead, in the event of a retrial of the case at bar, a modified version of CALJIC No. 8.77 should be given, covering the effect of diminished capacity due to voluntary intoxication on the specific intents to commit murder and to unlawfully kill a human being as well as the specific mental state of malice aforethought.

■ CALJIC No. 3.35 (*Wells-Gorshen* rule) on diminished capacity due to voluntary intoxication is a proper instruction (see *People* v. *Spaniel, supra,* 262 Cal.App.2d 878, 886-887) and is to be used instead of CALJIC No. 4.21. The latter uses language that ". . . the jury *should consider* his state of intoxication in determining if defendant had such specific intent." CALJIC No. 3.35 language tells the jury ". . . you *must* take all the evidence into consideration . . . ." in making such a determination. (Italics added in both instructions.) This mandatory language comports with the CALJIC No. 2.90 instruction on proof beyond a reasonable doubt as to defendant's guilt. The jury may not *believe* the defense evidence on diminished capacity, but it *must* take it into consideration in its deliberations if the defendant is to have a fair trial on all the issues raised.

### LESSER INCLUDED OFFENSE WITH SPECIFIC INTENT

■ Defendant was convicted of the lesser included offense in count II of possession of a deadly weapon with intent to commit an assault on

another, a misdemeanor in violation of Penal Code section 467. The trial court gave CALJIC No. 4.20 (voluntary intoxication—not a defense) as to the offense in count II of assault with a deadly weapon in violation of Penal Code section 245, subdivision (a). This charged offense is a general intent crime; diminished capacity has no effect on the general intent and CALJIC No. 4.20 does apply to it. (*People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].) CALJIC No. 4.20 should have been limited to the main charge and to the lesser included offenses which were general intent crimes. CALJIC No. 3.35 on diminished capacity should have been given as to the lesser offense of violating Penal Code section 467. Since defendant was thus deprived of a defense to the lesser included offense he was convicted of, we reverse that conviction also.

## USE OF A FIREARM FINDING

The judgment as pronounced and entered reflected the jury's finding of the use of a firearm in connection with count II. Since defendant was convicted only of the misdemeanor offense of violation of section 467 of the Penal Code, which is not an offense to which section 12022.5 applies, that was error. The People concede that the judgment must be modified by striking that reference.

## ADMITTING TWO PRIOR CONVICTIONS

Defendant contends, and the People concede, that defendant was not given the advice required by *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561], before he admitted the two alleged prior convictions of a felony. A reversal is required to eliminate the effect of that error.

## OTHER CONTENTIONS

Although at this point we have disposed of the appeal by reversing the entire judgment, other points should be clarified in the event of a retrial.

1. *Denial of cross-examination.* The witness William Reid testified for the People at the preliminary hearing. He died before trial and his testimony at the preliminary hearing was admitted against defendant at the trial. Defendant's contention that he was denied full and complete cross-examination of Reid at the preliminary hearing is not borne out by the transcript thereof and this contention is without merit.

2. *Impeachment of hearsay declarant—prior felony conviction.* The witness Samuel Willis testified for the People at the preliminary hearing. He also died before trial and his testimony at the preliminary hearing was admitted against defendant at the trial. Defendant sought to introduce evidence of a prior felony conviction of hearsay declarant Willis in order to impeach his testimony. (Evid. Code, §§ 1202 and 788.) Defense counsel produced a record of a felony conviction in 1958 in Los Angeles County for grand theft of a person named "Samuel Willet" with the same birth date as Willis. The trial court took judicial notice of this record. While first discussing authentication of the record to be that of the declarant, the trial court cut off further consideration of that matter by ruling that under the guidelines set out in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], any felony conviction prior to 1961 was too remote. Trial occurred in mid-1976. Had the attempted impeachment by prior felony conviction been of a *defendant,* this 18-year-old prior would have been subject to the holding in *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43] (19- and 17-year-old priors having dishonesty characteristics).

In applying Evidence Code section 352's discretion to exclude relevant evidence to an offer of proof of impeachment of a witness under authority of Evidence Code section 788, and the guidelines of *People* v. *Beagle, supra,* 6 Cal.3d 441, a distinction is drawn between the defendant as the witness to be impeached and a nondefendant witness for either side. (See *People* v. *Carr* (1973) 32 Cal.App.3d 700 [108 Cal.Rptr. 216] (a prosecution witness).) Also a distinction is made where a nonjury court trial is had. (See *People* v. *Banks* (1976) 62 Cal.App.3d 38 [132 Cal.Rptr. 751].)

These cases indicate that it was error for the trial court to rigidly apply the guidelines of *People* v. *Beagle, supra,* 6 Cal.3d 441, as to remoteness of the prior conviction to impeach Willis, without taking into account, in the weighing process necessary under Evidence Code section 352, the fact that the witness was not a defendant in a criminal case being then tried before a jury.

Here we have a key hearsay declarant's statements being admitted against defendant. The right to impeach such declarant is vital for defendant's defense. It was an abuse of discretion, therefore, for the trial court to deny defendant this right by excluding evidence of a felony conviction that related to dishonesty in spite of its relative antiquity. The trial court's ruling, based on Evidence Code section 352, precluded

defendant from offering evidence necessary to establish due authentication of the felony conviction.

■ 3. *Copies of transcripts to jurors.* During trial and before a reporter began reading the transcripts of the preliminary hearing testimony of both Willis and William Reid, copies of such transcripts (edited) were given to each juror and alternate juror to read and follow the reading by the reporter. The copies were collected at the conclusion of the reading and did not go into the jury room during deliberation. Defendant objected to this procedure, correctly stating that this would unduly emphasize the testimony of these two dead prosecution witnesses who were the victims of the only two charges of which defendant was convicted. An analogy can be drawn to the reason for the procedural rule as to past recollection recorded evidence in Evidence Code section 1237, subdivision (b): "The writing may be read into evidence, but the writing itself may not be received in evidence unless offered by an adverse party." As stated in Jefferson, California Evidence Benchbook, section 11.2 at page 150, the reason for the rule "is to prevent giving past recollection recorded evidence greater stature than the oral testimony of a witness." In *People* v. *Davis* (1968) 265 Cal.App.2d 341, 350 [71 Cal.Rptr. 242], the admission in evidence of the writing by the party using it (proponent) was held to be error.

As to the jurors' use of copies of the preliminary hearing transcripts during the reading thereof by the reporter, we can find no California cases directly in point. We hold that such procedure was error under the facts and circumstances of this case.

The judgments of conviction of assault with intent to commit murder in violation of Penal Code section 217 in count I and of possession of a deadly weapon with intent to assault another, in violation of Penal Code section 467, count II, are reversed. The finding of the use of a firearm in violation of Penal Code section 12022.5 as to count II is ordered stricken from the judgment. The finding that the two prior felony convictions of defendant are true is stricken.

Jefferson (Bernard), J., concurred.

**KINGSLEY, Acting P. J.**—I concur in the result. However, I do not agree with two matters discussed in the majority opinion.

(1) The evidence offered in the attempt to impeach Willis, was the record of a conviction of a person named "Samuel Willet," apparently for theft. Apart from the fact that "Willet" appeared to have been born on the same day as Willis, and bore the same first name, nothing in the record shows that they were the same person. On the record before us, exclusion of the record relating to "Willet" was not error.

Since the proffered evidence was properly excluded, I see no reason to discuss the hypothetical right to have used an 18-year-old conviction as impeachment of a nondefendant witness.

(2) The People's case rested on the transcribed testimony of Reid and Willis: Under those circumstances, it is pointless to talk about emphasizing their testimony—that was all the testimony the jury had to consider. It is one thing to hear a witness; it is another thing to hear another party read that testimony, with the reader's possible misreading and with the reader's own emphasis of what is read. I cannot see that, in this case, the action of the trial court in allowing the jury to follow the reading from a transcript had any prejudicial effect; rather, it let the jury put its own emphasis on what Reid and Willis had said at the preliminary hearing.

A petition for a rehearing was denied May 10, 1978. Kingsley, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied June 15, 1978.