Filed 4/21/15  P. v. Lopez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAVIER LOPEZ,<br><br>Defendant and Appellant. | F067368<br><br>(Super. Ct. No. LF009162A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Defendant Javier Lopez was convicted of attempted premeditated murder, assault with a deadly weapon, and participation in a criminal street gang; the jury found true the

firearm use allegations. Following a subsequent court trial, the prior serious felony and prior prison term allegations were also found true.

On appeal, defendant asserts the trial court abused its discretion and violated his due process rights by admitting evidence of prior misconduct pursuant to Evidence Code section 1101, subdivision (b), and to the degree counsel failed to object, counsel rendered ineffective assistance. Next, he maintains the trial court abused its discretion and his Sixth Amendment right to confrontation by denying his request to impeach the victim's testimony with a prior felony involving dishonesty. Further, defendant argues the "jail classification admissions were un-*Mirandized*, coerced, inadmissible" and in violation of his due process rights, were inadmissible hearsay in violation of *Crawford v. Washington* (2004) 541 U.S. 36, and counsel was ineffective for failing to move to exclude that evidence under Evidence Code section 352 and the Sixth and Fourteenth Amendments to the United States Constitution. Lastly, defendant asserts cumulative error. We will affirm the convictions.

### BRIEF FACTUAL AND PROCEDURAL BACKGROUND[1]

On July 31, 2012, Jesus Romo was walking on Montal Street in Lamont when he stopped to speak with occupants of a vehicle. One of the car's occupants—the front seat passenger—got out of the vehicle and confronted Romo with a gun. Romo was shot in the upper leg as a result of the confrontation. The gunman fled.

Eventually, Romo admitted to law enforcement that he knew the shooter: Javier Lopez. Both the victim and defendant have some history with the same southern Hispanic gang known as the Lamont 13. It appears defendant shot Romo because Romo was advising young Lamont 13 gang members not to listen to defendant. Kern County Sheriff's Deputy Mario Magana testified as a gang expert regarding southern Hispanic gangs, including the Lamont 13 and its members and activities.

---

[1]The relevant facts will be explored more fully where appropriate in the discussion that follows.

2.

Defendant was charged by information with attempted murder (Pen. Code, §§ 664, 187), assault with a firearm (§ 245, subd. (a)(2)), and willful and unlawful active participation in a criminal street gang (§ 186.22, subd. (a)). A variety of enhancements were also alleged. Defendant was tried by a jury and convicted of all counts. Codefendant Daniel Zaragoza was acquitted of all charges based on allegations he was the driver of the vehicle on the instant occasion when Romo was shot. In a bifurcated proceeding, the judge found prior serious felony and prior prison term allegations to be true. Thereafter, defendant was sentenced to an indeterminate term of 39 years to life plus a seven-year determinate term. This appeal followed.

## DISCUSSION

### Evidence Code section 1101

Defendant contends the trial court abused its discretion and violated his right to a fair trial and due process when it permitted the admission of prior similar act evidence. He claims no rational inference connected the instant charges to a prior incident where Romo was shot at two or three months earlier. More specifically, he claims that although the two incidents allegedly involve the same victim and defendant, this evidence should not have been admitted to establish identity, intent and knowledge, motive, or common scheme or plan. As a result, the evidence violated defendant's constitutional rights and was plainly prejudicial. To the degree defendant's attorney did not object to the admission of the evidence, defendant argues he rendered ineffective assistance of counsel. We are not persuaded.

Evidence Code section 1101 provides as follows:

"(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan,

3.

knowledge, identity, absence of mistake or accident …) other than his or her disposition to commit such an act."

"Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393.)

The trial court's ruling under either Evidence Code section 1101 or section 352 is reviewed on appeal for abuse of discretion. (*People v. Homick* (2012) 55 Cal.4th 816, 865; *People v. Lenart* (2004) 32 Cal.4th 1107, 1123; *People v. Kipp* (1998) 18 Cal.4th 349, 369, 371.)

Evidence of crimes not charged in the present proceeding, though sometimes admissible for the purposes set forth in Evidence Code section 1101, subdivision (b), must be handled with care:

> "It is … well settled that evidence may be admitted, even though it embraces evidence of the commission of another crime, if it logically tends to prove a material element in the People's case. [Citations.] However, 'It has frequently been recognized … that because of the sound reasons behind the general rule of exclusion, the relevancy of evidence of other crimes, and therefore its admissibility, must be examined with care. [Citation.] The evidence should be received with "extreme caution," and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. [Citations.]'" (*People v. Guerrero* (1976) 16 Cal.3d 719, 724.)

"'Where a defendant is charged with a violent crime and has or had a previous relationship with a victim, prior assaults upon the same victim, when offered on disputed issues, e.g., identity, intent, motive, etcetera, are admissible based solely upon the consideration of identical perpetrator and victim without resort to a "distinctive modus operandi" analysis of other factors.' [Citations.]" (*People v. Kovacich* (2011) 201

4.

Cal.App.4th 863, 893, quoting *People v. Zack* (1986) 184 Cal.App.3d 409, 415; see *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 585 ["The requirement for a distinctive modus operandi does not apply when the prior and charged acts involve the same perpetrator and the same victim. The courts have concluded that evidence of prior quarrels between the same parties is obviously relevant on the issue whether the accused committed the charged acts"]; see also *People v. San Nicolas* (2004) 34 Cal.4th 614, 668 ["'evidence of threats of violence by an accused against the victim of an offense is proof of the identity of the offender'"].)

Here, defendant was charged with a violent crime—attempted murder—against Romo, an individual whom defendant had previously assaulted in an earlier drive-by shooting. Defendant and Romo were both involved with the Lamont 13. The prior bad act evidence was admissible because it is "'based solely upon the consideration of identical perpetrator and victim [and] without resort'" to other factors. (*People v. Kovacich*, *supra*, 201 Cal.App.4th at p. 893; see *Rufo v. Simpson*, *supra*, 86 Cal.App.4th at p. 585.) Further, evidence showing "'quarrels, antagonism or enmity between an accused and the victim of a violent offense is proof of motive to commit the offense.'" (*People v. Daniels* (1971) 16 Cal.App.3d 36, 46; accord, *People v. San Nicholas*, *supra*, 34 Cal.4th at p. 668; *People v. Shaver* (1936) 7 Cal.2d 586, 592; *People v. DeMoss* (1935) 4 Cal.2d 469, 473.)

In closing argument, the prosecutor referenced proof of motive: "I don't have to provide evidence of motive in this case, but I did because motive is clear. Motive is [defendant], Daniel Zaragoza, working together to kill Jesus Romo because Jesus Romo disrespected [defendant], who wants to be the leader of the gang." That same evidence was referenced in the People's closing argument concerning intent, premeditation, and deliberation.

Even when evidence is relevant under Evidence Code section 1101, subdivision (b), it must be excluded under section 352 if its prejudicial effect substantially outweighs its probative value:

"Our conclusion that section 1101 does not require exclusion of the evidence of defendant's uncharged misconduct, because that evidence is relevant to prove a relevant fact other than defendant's criminal disposition, does not end our inquiry. Evidence of uncharged offenses 'is so prejudicial that its admission requires extremely careful analysis. [Citations.]' [Citations.] 'Since "substantial prejudicial effect [is] inherent in [such] evidence," uncharged offenses are admissible only if they have *substantial* probative value.' [Citation.] [¶] … We thus proceed to examine whether the probative value of the evidence of defendant's uncharged offenses is 'substantially outweighed by the probability that its admission [would] … create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.)

Therefore, having determined the challenged evidence was admissible, we next assess whether the trial court properly exercised its discretion pursuant to Evidence Code section 352. A court may exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) A trial court retains the discretion to admit or exclude evidence under section 352. The exercise of that discretion will not be disturbed on appeal absent a showing that the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner. (*People v. Hartsch* (2010) 49 Cal.4th 472, 497; *People v. Rodriguez* (1999) 20 Cal.4th 1, 9.)

Defendant complains the trial court failed to conduct the necessary Evidence Code section 352 inquiry. "[H]owever, a court need not expressly weigh prejudice against probative value or even expressly state that it has done so, if the record as a whole shows the court was aware of and performed its balancing functions under Evidence Code section 352." (*People v. Taylor* (2001) 26 Cal.4th 1155, 1169.)

The minute order of April 2, 2013, notes an in chamber, off-the-record discussion regarding the motions in limine. As to codefendant Zaragoza's motion in limine No. 7,**2** the minute order reflects the following: "DEFENDANT ZARAGOZA MOTION IN

---

**2**Zaragoza's written motion is not a part of the record on this appeal.

6.

LIMINE #7 IS JOINED BY [LOPEZ'S COUNSEL] AND IS DENIED." The following discussion ensued regarding the relevant motion in limine:

> "[THE COURT]: [Addressing codefendant Zaragoza's motions in limine.] [Defense counsel for Lopez], as I understand, is joining in that motion.

> "[DEFENSE COUNSEL FOR LOPEZ]: Yes, Your Honor.

> "THE COURT: Okay. And these uncharged crimes deal only, as I understand it, with one incident attributed to [defendant] Lopez with a shooting or shooting attempt on Mr. Romo; is that right? [¶] … [¶]

> "[PROSECUTOR]: Yes, Your Honor. I believe there may be some evidence that will be used to prove gang participation that might fall under Defendant's Motion 7.

> "THE COURT: In regard to that motion, it's tentatively denied. And if there's an issue that comes up during the trial that needs to be revisited, we can revisit it."

Hence, a review of this record establishes the court was aware of and performed its required Evidence Code section 352 consideration because, although it did not expressly reference the applicable statute or explain its more probative than prejudicial finding, it left open the possibility of revisiting the issue during the trial. Evidence that defendant previously targeted Romo is highly relevant to an understanding of the circumstances behind the current offense. And although Romo is the only eyewitness to the earlier event, as the prosecutor noted in his closing argument, Efrain Calvo's testimony can be interpreted to corroborate Romo's testimony as to a previous incident involving a gun.

During direct examination, Romo testified he approached a black Honda on Montal Street after recognizing defendant as its front seat passenger. Romo spoke first, telling defendant he did not have any "bad intentions toward him" after an incident that occurred a few months earlier in April. On that occasion Romo had been driving a truck when someone began firing at it. The truck was riddled with bullet holes; Romo suffered a burn when one of the bullets rolled down his neck. During cross-examination by

7.

defendant's attorney, Romo explained the truck was owned by a friend of his. As he drove around, accompanied by two passengers, defendant stepped out from between two parked cars and began firing. Romo did not report the incident to police. A neighbor took photographs of the truck and forwarded them to Romo.

Romo also testified about a conversation he and defendant had when Romo was in custody for failing to appear as ordered in this case. Defendant told Romo that he "fe[lt] bad" for shooting him in the leg, and that if he could go back to that day, he would have handled it differently.

Efrain Calvo was a resident of Montal Street in Lamont. On the evening of July 31, 2012, he heard what he initially believed to be fireworks and then arguing. He determined the sound was gunfire and looked outside. He heard someone yell, "That's what you get for talking shit. By the way, that was a drive-by bitch."

All things considered, the significant probative value of evidence concerning the animosity between Romo and defendant outweighed the probability that its admission would necessitate undue consumption of time or create substantial danger of undue prejudice. The trial court did not err by admitting it.

### Request to Impeach Victim's Testimony

Defendant maintains the trial court abused its discretion and violated his Sixth Amendment right to confrontation when it denied his request to impeach Romo's testimony with a prior felony conviction involving dishonesty.

Evidence Code section 788 authorizes admission of a prior felony conviction for "the purpose of attacking the credibility of a witness." A felony conviction is admissible under Evidence Code section 788 only if the felony involves "moral turpitude." (*People v. Castro* (1985) 38 Cal.3d 301, 317.) Also, prior misdemeanor conduct involving moral turpitude is admissible impeachment evidence. (*People v. Wheeler* (1992) 4 Cal.4th 284, 295-296, superseded by statute on another point in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1459-1460.) The belief is that "[m]isconduct involving moral turpitude may suggest a willingness to lie." (*Wheeler*, at p. 295.) Therefore, such

evidence is routinely deemed relevant to credibility determinations, subject to a trial court's broad discretion under Evidence Code section 352. (*Wheeler*, at p. 296.)

In reviewing on appeal a trial court's decision to allow impeachment of a witness with a prior felony conviction involving moral turpitude, we apply the abuse of discretion standard. (*People v. Clark* (2011) 52 Cal.4th 856, 932.)

Here, counsel for defendant moved for leave to impeach Romo with a prior forgery conviction. The offense of forgery does involve moral turpitude. (*People v. Parrish* (1985) 170 Cal.App.3d 336, 349.) More particularly, during the hearing on the motions in limine, the following occurred:

> "[THE COURT:] Then in regard to Number 5, the motion for leave to impeach prosecution witness Jesus Romo with the prior of forgery from 2000, my tentative is to deny based on the appropriate factors, including the age of the conviction, the nature of the conviction, and the prejudicial effect in regard to the probative value, and then, also, given the lack of any significant criminal record other than what I understand would be an infraction since that date. [¶] [Defense counsel]?

> "[DEFENSE COUNSEL FOR LOPEZ]: Your Honor, Mr. Romo is the alleged victim in this case. He's really the only witness who can testify that [defendant], my client, was the man that shot him; so his credibility, in this case, is probably the primary issue that the jury has to consider.

> "Given the fact that he has this 2000 conviction for felony forgery, which is obviously a felony, crime of moral turpitude for which he went to prison for, it's not too remote, given it was in the year 2000 and the fact it was a felony, went to prison, I think, is significant. I'd ask that that matter be admissible.

> "THE COURT: [¶] … [¶] Mr. [Prosecutor]?

> "[PROSECUTOR]: Your Honor, I agree with the Court's tentative ruling, based on the age of the conviction being 13 years ago and the fact that Mr. Romo has not had any other serious violations with the law since then, I believe it should be kept out. I believe if Mr. Romo were a defendant, I think most Courts would keep that out due to the age of his conviction. [¶] On that, I'll submit it.

> "THE COURT: Tentative will be the order of the Court."

The trial court considered the appropriate factors in making its determination.

9.

"In exercising its discretion, the trial court must consider four factors identified by our Supreme Court in *People v. Beagle* (1972) 6 Cal.3d 441, 453 …: (1) whether the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of a prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the defendant does not testify out of fear of being prejudiced because of the impeachment by prior convictions." (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.)

Although the trial court is required to consider the *Beagle* factors, the factors "need not be rigidly followed." (*Ibid*.)

Defendant argues that in this circumstance only the first two *Beagle* factors apply. We agree. He contends then that the first factor "weighs heavily in favor of admission" of Romo's prior conviction for forgery and that the court "rel[ied] entirely on a finding that the 13-year-old prior conviction was too remote." We do not agree with this characterization, however.

A review of the foregoing excerpt reveals the court considered whether the forgery conviction reflects on an individual's honesty or veracity, to wit: "my tentative is to deny based on the appropriate factors, including the age of the conviction, *the nature of the conviction*, and the prejudicial effect …." (Italics added.) When the witness subject to impeachment is not the defendant, the primary factors for consideration are whether the conviction (1) reflects on honesty, and (2) is near in time. (*People v. Clair* (1992) 2 Cal.4th 629, 654.) While a conviction for forgery plainly reflects upon one's honesty, Romo's conviction was not near in time. It was 13 years earlier, and nothing of significance followed. Defendant's reliance on *In re Hyde* (2007) 154 Cal.App.4th 1200 and *People v. Antick* (1975) 15 Cal.3d 79, disapproved on other grounds in *People v. McCoy* (2001) 25 Cal.4th 1111, is misplaced because those cases are distinguishable. *Hyde* concerned the appropriateness of a past conviction for purposes of a parole determination. And the forgery convictions at issue in *Antick* were those suffered by the defendant himself. Neither are we persuaded by defendant's citation to *People v. Stevenson* (1978) 79 Cal.App.3d 976, 989-990 (error to rigidly apply *Beagle* guidelines).

Additionally, remoteness alone may form a sufficient basis for exclusion of evidence under Evidence Code section 352. (See *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1554.)

In sum, the trial court's determination is supported by its proper consideration of the relevant material facts and legal principles. There is no basis upon which to find it abused its broad discretion in this circumstance. (*People v. Knoller* (2007) 41 Cal.4th 139, 156; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 644.)

***Gang Evidence: Jail Classification and Out-of-Court Police Evidence***

Defendant contends the jail classification admissions were "un-*Mirandized*," coerced, inadmissible, and violative of his right to due process and a fair trial. Further, he argues the out-of-court police evidence regarding gang affiliation was inadmissible hearsay pursuant to *Crawford v. Washington*, *supra*, 541 U.S. 36. Lastly, defendant maintains trial counsel was ineffective for failing to move to exclude the aforementioned evidence under Evidence Code section 352 and the Sixth and Fourteenth Amendments to the United States Constitution.

Defendant has waived the foregoing contentions by failing to object below. (Evid. Code, § 353, subd. (a).) Nevertheless, defendant asserts his trial counsel was ineffective. (*Strickland v. Washington* (1984) 466 U.S. 668; *People v. Ledesma* (1987) 43 Cal.3d 171.) However, "'the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, these cases are affirmed on appeal. [Citation.]'" (*Ledesma*, *supra*, at p. 218.) We will affirm

Notwithstanding the failure to object below, any error was harmless. The evidence of defendant's gang ties extended well beyond the jail classifications and "out-of-court police evidence" about which defendant complains.

Specifically, defendant's gang-related tattoos include the words "*Estillo ocho cuarenta y cinco*" (845 Style) referring to the prefix for Lamont, an image of a Mayan

11.

Aztec war shield in the shape of an "L," three dots on the web of his left hand that signify southern gang membership, an image on his head of a smoking double-barreled shotgun that refers to a previous incident on Pierce Avenue, and a tribute to his deceased brother Ponchin on his left arm. Further, defendant is known by the gang monikers "Sniper," "Moncies," and "Wicked," and has been photographed with known gang members displaying gang signs and weapons while wearing gang colors or paraphernalia. Significantly, too, after defendant's arrest for the instant offenses and his interview with authorities that did include *Miranda* warnings, defendant indicated "Lamont" when asked about gang associations in jail during that particular booking process.

Even assuming error, any error was harmless because the admissible evidence overwhelmingly established defendant's gang affiliation.

### *Cumulative Error*

Defendant asserts cumulative error requires reversal. However, because we have found no errors in defendant's three arguments on appeal, his claim of cumulative error fails. (See *People v. Seaton* (2001) 26 Cal.4th 598, 639; *People v. Bolin* (1998) 18 Cal.4th 297, 335.)

### DISPOSITION

The judgment is affirmed.

_____
                                                          PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
SMITH, J.

12.