Filed 2/2/16  P. v. Guerrero CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JORGE GUERRERO,<br><br>  Defendant and Appellant. | F068331<br><br>(Super. Ct. No. F13903683)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

J. Edward Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Detjen, J. and Franson, J.

A jury convicted appellant Jorge Guerrero of attempted voluntary manslaughter (Pen. Code, §§ 664, 192, subd. (a)),[1] a lesser included offense of the attempted willful, premeditated murder offense charged in count 1, and assault with a deadly weapon (count 2/§ 245, subd. (a)(1)).  The jury also found true a great bodily injury enhancement in each count (§ 12022.7, subd. (a)).  On November 4, 2013, the court sentenced Guerrero to a six-year prison term.

On appeal, Guerrero contends the court abused its discretion when it limited the number of prior convictions the defense could use to impeach the victim.  We affirm.

## FACTS

The prosecution presented its case primarily through the testimony of Shane Schlievert, the victim of Guerrero's offenses.  Schlievert testified that in August 2011, he moved into a house on Arthur Street in Fresno with his girlfriend Jennifer Fierro and their two daughters.  In October 2011, Guerrero and his brother Mike Guerrero (Mike) moved into the house next door.  Their friend, "Hek," was at their house all the time.

In early June 2012, while Guerrero was in the process of moving out of his house, Schlievert and Guerrero agreed to trade Schlievert's decorative carousel for Guerrero's two security cameras.  Schlievert gave Guerrero the carousel that same day.  Guerrero gave Schlievert permission to enter his house to get the cameras and told him the door would be open.  A few days later, Schlievert went to Guerrero's house in the evening but found no one home and the front door locked.  Schlievert entered the house through an unlocked rear sliding glass door, unmounted the cameras, and took them home.

The next morning, Hek showed up at Schlievert's front door with a screwdriver in his right hand, tucked into the long-sleeved shirt he was wearing.  Hek told Schlievert Guerrero wanted to talk with him.  Schlievert replied that he was busy and would see Guerrero later.

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

At 4:00 p.m. or 5:00 p.m., Schlievert was in his yard selling a car to a man, when Mike walked up to him in an aggressive manner and said something about the cameras. Schlievert asked Mike if Schlievert could talk to Guerrero about it. Mike whistled and Guerrero and Hek came out from behind a woodpile and quickly walked up to Schlievert. Schlievert asked Guerrero what was going on and why he was rushing him. Guerrero replied, "Deal's off. [Expletive] the deal." Schlievert asked Guerrero if they could talk about it later and Guerrero responded, "No, we're settling this now."

Schlievert asked the trio to hold on a second and he went in the house, gave Fierro the money he received from selling the car, and asked her to call 911. Although Schlievert believed things were going to get worse, he went back outside and locked the door behind him because he was concerned for his family's safety. Guerrero told Mike to go into Schlievert's house and get the cameras. Mike used a shovel that was on the front porch to break the glass on Schlievert's front door. However, after cutting his arm reaching inside, Mike kicked the door in. Schlievert then rushed Guerrero and Hek in an attempt to get them to call Mike to help them.

While Mike was in the house, Schlievert exchanged insults with Guerrero and Hek, who was armed with a screwdriver. Guerrero and Hek also alternated between moving toward Schlievert and backing away when Schlievert moved toward them. As he advanced toward Schlievert, Hek swung his arm out around to his right with the tip of the screwdriver in a forward position as if to stab Schlievert. Guerrero was not armed at that point and advanced on Schlievert with his fists up, attempting to strike him. When Hek came close to stabbing him in the back, Schlievert drew a utility knife he kept on his belt in a sheath, grabbed Hek's shirt, and pushed him against a washer that was in the front yard.[2] He then put the knife up to Hek's neck and told him to stop before letting him go.

---

[2] Schlievert was a mechanic who worked on cars at his house. He testified that he used the knife to clean head gaskets. The knife was approximately five inches long, with the blade and the handle each approximately 2.5 inches long.

Mike eventually came back outside, gave the shovel to Guerrero, and grabbed a wooden stick, approximately four feet long, from Schlievert's porch; Hek grabbed a large rock from the ground. All three men rushed Schlievert, who then used his knife primarily to block attacks from them because he could not get close enough to strike them with it. Guerrero swung the shovel at Schlievert and hit him up to six times on the wrist and twice on the head. Meanwhile, Hek tried to stab Schlievert with the screwdriver or hit him with the rock, as Mike swung the stick at Schlievert or tried to poke him with it.

Schlievert eventually threw away the knife because the blade got bent. When Mike again jabbed him with the stick, Schlievert grabbed it, causing them both to fall on to the street. Mike rolled over Schlievert, and Hek hit Schlievert in the left temple with the rock while Schlievert's head was against the asphalt. Hek then stabbed Schlievert on the left side and "scramble[ed] [his] guts with the screwdriver," as Guerrero struck Schlievert multiple times with a shovel on his head, forcing his head against the asphalt, and Mike, who was now standing, kicked him. After Guerrero hit Schlievert on the head with the edge of the shovel, which caused him to start bleeding, Guerrero, Mike, and Hek went inside Guerrero's house. However, they soon came back out, placed the shovel, the screwdriver, and the stick used in the attack in the trunk of Guerrero's car and drove off in a hurry, leaving Schlievert lying on the street, bleeding.

Schlievert was eventually taken to a hospital where an incision was made in his face to "bleed it out" because the left side had swollen to the size of a softball. He also received 11 staples and seven stiches to repair his head where it was split open by the blow from the shovel, and four staples to close the wound caused by Hek stabbing him with the screwdriver. Additionally, Schlievert required three different surgeries to stop internal bleeding, and the blow with the rock left him with two soft spots on his head.

**DISCUSSION**

*Background*

Prior to trial, the prosecutor filed a motion in limine seeking to impeach Guerrero with his 2009 felony assault with a deadly weapon adjudication (§ 245, subd. (a)(1)) in juvenile court. The prosecutor also sought to prohibit the defense from referring to Schlievert's 2004, 2006, and 2012 misdemeanor convictions for spousal battery (§ 243, subd. (e)(1)). The moving papers stated that Schlievert also had a 2006 conviction for infliction of corporal injury on a spouse (§ 273.5).

On September 4, 2013, at a hearing on the in limine motions, the court found that Guerrero's assault adjudication, Schlievert's 2012 spousal battery convictions and his 2006 conviction for infliction of corporal injury on a spouse were crimes of moral turpitude, and that they were recent enough to be probative on the issue of credibility. It also found that Schlievert's 2012 spousal battery conviction was probative on the issue of Fierro's credibility because she was the victim of the underlying offense, that Guerrero's assault adjudication was probative on the issue whether he acted in self-defense, and that Schlievert's convictions were probative on the issue whether he was the aggressor. However, in weighing the probative value of admitting these convictions against their prejudicial effect (Evid. Code, § 352),[3] the court tentatively ruled that only Schlievert's 2012 spousal battery conviction and Guerrero's 2009 assault adjudication "would be admissible not subject to any limitation." In announcing its tentative ruling, the court stated:

> "So my initial impression … is that they're going to be admissible
> for all purposes, at least the 245(a)(1) adjudication … and at least the 2012,

---

[3]   Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

5

243(e)(1) … for Mr. Schlievert. Whether I let in the 2006 case or not, calls into question whether it starts to become a situation where jurors would be so convinced that he's this brute at home that they would simply not listen … and would just assume he's the aggressor."

Later during the hearing, when defense counsel asked the court if it was considering admitting Schlievert's 2006 spousal battery conviction, the court acknowledged it was and stated:

> "So we have three fairly recent convictions and because of that I'd be inclined to allow in two, but again, I don't want either witness to be so disabled by their conviction or adjudication history that they just have no chance to be believed, but I also don't think that either witness should come here and testify under some cloak or some false [aura] of veracity."

Still later during the hearing, defense counsel advised the court that he had been provided information that in 2006, Schlievert was convicted of both spousal battery and infliction of corporal injury on a spouse, and in 2009, Schlievert was convicted of misdemeanor vandalism (§ 594, subd. (a)), and failure to appear (§ 1320, subd. (b)). He also argued at length that all of Schlievert's convictions should be admitted for all purposes. After agreeing that failure to appear was a crime of moral turpitude, the court stated:

> "Well, I think what I'll do then because I was aware that he had these three battery-related convictions but I wasn't altogether clear on all history. I'll just get a printout from my clerk of all his past … criminal adjudication history, and I'll consider that because that is a valid argument. You know, if there's just no law abiding conduct at all between convictions, then … case law says those are very recent in time, they are highly probative, they are more probative because of that and that would be a reason to let in at least those two that I discussed.
>
> "I seriously doubt that I'm going to do more than two even if I do find that there's a relative uninterrupted stream of misconduct starting from 2004 because just like I [said], I wouldn't do that to the defendant and I'm not going to do it to a complaining witness just to completely disable the witness. I mean jurors for whatever reason, we think one 243, three 243's who cares but to the jurors it matters and so I think it's likely then that we'll end up with the two [convictions] and I'll get the record on that 2006 case

6

because the People have down here that it's 273.5, you have a 243(e)(1), it's not likely it would be both unless there were two separate incidents. If there were … we want to know that, too. [¶] So, I'll get those records. I'll take a look [at] those and I'll give you that input before the final ruling tomorrow.…"

The following day, the court prefaced its final ruling by stating that it had reviewed Schlievert's criminal history and had done more research on the admissibility of prior convictions.[4] It then ruled the defense could impeach Schlievert with his 2006 and 2012 spousal battery convictions, that if Guerrero testified, the People could impeach him with his assault adjudication, and that if the defense offered Schlievert's convictions to show his propensity for violence, the prosecutor could introduce evidence of Guerrero's assault conviction to prove his "character trait for violence."

During the trial, defense counsel impeached Schlievert with his 2006 and 2012 spousal battery convictions.

*Analysis*

Guerrero contends the court abused its discretion in limiting him to using only two misdemeanor convictions to impeach Schlievert because: (1) the court sought to "treat the evaluation" of Schlievert's impeachment priors "in the same light" as Guerrero's impeachment prior; (2) it allowed the defense to impeach Schlievert with only two convictions because of a fear that the "impeachment might actually work"; and (3) the trial court's ruling violated article I, section 28, subdivision (f) of the California Constitution, which prohibits the exclusion of relevant evidence at trial.[5] We will

---

**4** The court, however, did not clarify whether Schlievert was convicted in 2006 of both spousal battery and infliction of corporal injury on a spouse.

**5** Guerrero does not challenge the court's ruling with respect to admitting Schlievert's misdemeanor convictions to show his propensity for violence. Therefore, we analyze the trial court's ruling only with respect to admitting these convictions to impeach Schlievert's credibility.

7

reject these contentions.**6**

  "'"[I]f past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible, subject to trial court discretion....' [Citation.] 'When the witness subject to impeachment is not the defendant, those factors [guiding the court's discretion] prominently include whether the conviction (1) reflects on honesty and (2) is near in time.' [Citation.] However, 'the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad. The statute empowers courts to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues.' [Citation.] "'[C]ourts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value."'" (*People v. Leonard* (2014) 228 Cal.App.4th 465, 497.)

  "Review of a trial court decision pursuant to Evidence Code section 352 is subject to abuse of discretion analysis. [Citations.] 'The weighing process under [this] section … depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon mechanically automatic rules.'" (*People v. Greenberger* (1997) 58 Cal.App.4th 298, 352.)

  "We will disturb the trial court's exercise of discretion under Evidence Code section 352 only if the trial court's decision exceeds the bounds of reason." (*People v. Funes* (1994) 23 Cal.App.4th 1506, 1519.)

  "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]." (*People v. Clark* (2011) 52 Cal.4th 856, 932.)

The court initially found that Schlievert's 2012 spousal battery conviction, and his alleged 2006 conviction for infliction of corporal injury on a spouse, were probative on the issue of Schlievert's credibility. Later in the hearing, the court found that the prejudicial effect of allowing the defense to impeach Schlievert with all three of his

---

**6**   Since the parties do not contend that any of Schlievert's misdemeanor convictions did not involve moral turpitude, we assume, without deciding, that they do.

misdemeanor convictions involving "domestic violence" outweighed the probative value of doing so, because it might cause the jury to assume Schlievert was the aggressor and not listen to his testimony. Thus, the court tentatively ruled that the defense could impeach Schlievert with only his 2006 and 2012 misdemeanor spousal battery convictions. Later during the hearing, defense counsel advised the court that in 2009 Schlievert had a misdemeanor vandalism conviction and a misdemeanor failure to appear conviction and that he might have an additional spousal battery conviction. After listening to defense counsel argue at length that he should be allowed to impeach Schlievert with all his prior convictions, the court agreed failure to appear was a crime of moral turpitude. Nevertheless, it tentatively ruled that Schlievert could be impeached with only his 2006 and 2012 convictions for spousal battery.

The following day, after having reviewed Schlievert's criminal record and having done further legal research, the court affirmed its tentative ruling that it would allow Schlievert to be impeached with two spousal battery convictions. Thus, the record shows that in ruling that the defense could impeach Schlievert with only two of his prior convictions, the court engaged in a careful weighing of the probative value of admitting Schlievert's prior convictions against their prejudicial effect.

> "The California Supreme Court has divided crimes of moral turpitude into two groups. [Citation.] The first group includes crimes in which dishonesty is an element (i.e., fraud, perjury, etc.). The second group includes crimes that indicate a '"general readiness to do evil,"' from which a readiness to lie can be inferred. [Citation.] Crimes in the latter group are acts of 'baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Citation.] 'Although the inference is not as compelling in the latter case, "it is undeniable that a witness's moral depravity of any kind has some 'tendency in reason' [citation] to shake one's confidence in his honesty."'" (*People v. Chavez* (2000) 84 Cal.App.4th 25, 28-29.)

"In general, a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony." (*People v. Wheeler* (1992) 4 Cal.4th 284, 296 (*Wheeler*).)

The admission of two of Schlievert's prior convictions ensured that Schlievert did not testify with a false aura of veracity. Further, Schlievert's prior convictions were all misdemeanors that did not involve dishonesty, and generally a misdemeanor "is a less forceful indicator of immoral character or dishonesty." (*Wheeler, supra,* 4 Cal.4th at p. 296.) This buttressed the court's concern that the jury might be unduly influenced by the number of convictions, and not fairly assess Schlievert's credibility. Thus, the record supports the court's decision to allow Schlievert to be impeached with only two of these convictions.

In *People v. Carr* (1973) 32 Cal.App.3d 700 (*Carr*), this court held:

"The latitude of a trial judge to exclude prior felony convictions for impeachment purposes is, and rightly should be, greater as to defendants than for other witnesses; there is always a danger that if the jurors learn that the defendant suffered a prior felony conviction they will convict him merely because they believe that he is an evil person." (*Carr, supra,* 32 Cal.App.3d at p. 704.)

In discussing the admissibility of Schlievert's prior convictions for impeachment purposes, the court initially stated it did not want either witness to be "so disabled by their conviction or adjudication history that they [had] no chance to be believed." Later in the hearing, the court stated it was probably not going to allow Schlievert to be impeached with more than two prior convictions, because it would not do that to the defendant, and that it was not going to do that to "a complaining witness just to disable the witness."

Guerrero cites the quote from *Carr* and the comments noted in the preceding paragraph to contend the court erred in treating Schlievert and Guerrero the same with respect to admitting prior convictions for impeachment purposes. According to Guerrero,

10

the court should have "made rulings that gave Mr. Schlievert less latitude in excluding his prior convictions of moral turpitude for impeachment." We disagree.

We interpret the court's comments cited above as merely a reflection of the weighing process the court undertook in determining whether the probative value of admitting Schlievert's prior convictions for impeachment purposes was outweighed by their prejudicial effect, which it was required to do pursuant to Evidence Code section 352. The court's statements that it did not want to "disable" Schlievert reflect no more than the court's concern that the prejudicial effect of admitting Schlievert's prior convictions for impeachment purposes did not outweigh their probative value.

Further, the issue before the court in *Carr* was whether the court erred in not allowing the defense to impeach a witness with a prior murder conviction. (*Carr*, *supra*, 32 Cal.App.3d at pp. 702-703.) Thus, the quote from *Carr*, which was not directly related to the resolution of this issue, was dicta and not binding on this court. (*People v. Valencia* (2011) 201 Cal.App.4th 922, 929.) In any event, the quoted portion of *Carr* is inapposite because Guerrero does not challenge the court's decision to allow the prosecutor to impeach him with his assault adjudication. Additionally, it does not follow from the court's desire not to "disable" Schlievert's or Guerrero's testimonies that it did not exercise greater latitude in deciding whether to exclude Guerrero's prior adjudication than it did in deciding whether to exclude Schlievert's prior convictions. Accordingly, we reject Guerrero's contention that the court erred in the manner in which it evaluated which convictions could be used to impeach Schlievert.

Nor is there any merit to Guerrero's contention that the court erred in limiting the number of convictions Schlievert could be impeached with because it did so out of "a fear that the impeachment might actually work." Guerrero also bases this contention on the court's statement that it did not want Schlievert to be "so disabled" by his conviction history that he had no chance to be believed. However, as discussed above, this statement merely reflects the weighing process the court was required to engage in,

11

and the court's concern that the prejudicial effect of admitting Schlievert's prior convictions did not outweigh their probative value.

Finally, we reject Guerrero's contention that the exclusion of some of Schlievert's misdemeanor convictions violated the mandate of article I, section 28, subdivision (f) of the California Constitution, that prior convictions should be admitted without limitation for impeachment purposes.

"Section 28, subdivision (f) was added to the California Constitution in June 1982 with the passage of the Proposition 8 initiative. Under its terms, '[any] prior felony conviction ... shall subsequently be used without limitation for purposes of impeachment….'" (*People v. Castro* (1985) 38 Cal.3d 301, 327 (*Castro*).) However, in *Castro*, the Supreme Court held that "trial courts retain their discretion under Evidence Code section 352 to exclude evidence of prior felony convictions when their probative value is [substantially] outweighed by the risk of undue prejudice." (*Id*. at p. 323.) Further, since the court engaged in the requisite weighing process prior to ruling that only two of Schlievert's misdemeanor convictions could be used to impeach him, the ruling did not contravene article I, section 28, subdivision (f) of the California Constitution. Thus, we conclude that the court did not abuse its discretion when it allowed Schlievert to be impeached with only two of his prior misdemeanor convictions.

Moreover, reversal is not required unless it is reasonably probable that a result more favorable to Guerrero would have occurred if the court had admitted all of Schlievert's misdemeanor convictions. (*Castro*, *supra*, 38 Cal.3d at p. 319.)

As previously discussed, Schlievert's prior convictions were less likely to undermine his credibility because they were all misdemeanor convictions, none of them involved dishonesty, and, in any event, he was impeached with two of these convictions. Further, the defense also impeached Schlievert during cross-examination by getting him to admit that he did not tell the deputy who interviewed him about anything that happened prior to the commencement of the actual physical altercation or that Mike used

12

a shovel to gain entry into Schlievert's house. The defense also impeached Schlievert through the testimony of the same deputy who testified that Schlievert did not disclose to him many details that he testified to, including that Schlievert was armed with and used a knife during the assault. The deputy also testified, contrary to Schlievert's testimony, that Schlievert told him the physical confrontation began after Mike came out of Schlievert's house. Further, the defense did not provide any affirmative evidence and the jury could view the hasty flight from the scene by Guerrero, Mike and Hek as exhibiting a consciousness of guilt. (CALCRIM No. 372.) Moreover, the serious injuries Schlievert received were more consistent with him having been attacked by Guerrero, Mike and Hek than with Schlievert having attacked them. Thus, we conclude it is not reasonably probable Guerrero would have received a more favorable result even if the court had allowed Schlievert to be impeached with more than two misdemeanor convictions.

## DISPOSITION

The judgment is affirmed.