Filed 7/25/25  P. v. Edwards CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY EDWARDS,<br><br>Defendant and Appellant. | C100871<br><br>(Super. Ct. No. 21FE000624) |

Defendant Anthony Edwards appeals from his convictions for assault with a deadly weapon and felon in possession of a firearm.  He contends the trial court abused its discretion by improperly excluding evidence supporting his theory of the case, excluding evidence impeaching a witness's credibility, and sentencing him to the middle term on the assault count by inaccurately characterizing his criminal history and failing to consider mitigating factors.  We find no error and affirm the judgment.

1

**FACTS AND PROCEEDINGS**

*Factual Background*

Witness A.J. dated victim J.R. from 2015 to the end of 2016. Their relationship ended when J.R. was convicted of a felony and went to prison; he was released from prison in 2018 or 2019. Around 2016 or 2017, either after or while dating J.R., A.J. began dating defendant. J.R. was jealous of that new relationship, and had "a lot of hate" for A.J.; he was aggressive toward her. Defendant and J.R. were aware of each other and had argued in the past.

A.J. testified that, by September 2020, she was no longer in a dating relationship with either defendant or J.R., but she still had feelings for defendant. A.J. subsequently visited defendant in jail two or three times while he was in custody in this case, and her feelings for him continued at the time of the preliminary hearing. J.R. testified that he and A.J. were dating in September 2020, he would sometimes stay with her, and they would see each other all the time. A.J. had told him that she was not seeing defendant anymore.

On the evening of September 13, 2020, defendant stabbed J.R. outside of A.J.'s house. The testimony about the events leading up to the stabbing was conflicting and difficult to follow.

J.R. testified that he was about to leave A.J.'s house after staying there the previous night; she gave him gas money. He opened the garage door and walked out to his car, which was parked across the street, but realized he had forgotten his car keys inside. He walked back into the house to get his keys while A.J. stood in the garage. After retrieving his keys, he went back through the garage to leave. He was standing next to A.J. when a truck pulled halfway into the garage. Defendant jumped out of the back of the truck, ran up to J.R., said, "I'm here for you, bitch," and stabbed him in the middle of his chest. The stabbing took only seconds, but J.R. testified that A.J. was facing the same

2

direction as he was and would have seen the stabbing despite the short duration of the incident.

After the stabbing, while wounded, J.R. walked inside the house and then back outside, all the while cursing at A.J., as he blamed her for his injury. The truck was gone, and J.R. did not see where it or defendant went.

J.R. told law enforcement that defendant had stabbed him and identified defendant in a photo lineup. He was transported to the hospital, where he underwent open heart surgery. He was not armed that day.

A.J. testified that on the night before the stabbing, she let J.R. stay at her house for the first time in years. Around that time she was allowing defendant to stay overnight nearly every night. Immediately before the stabbing, she was trying to get J.R. to leave but he was "procrastinating" and asking her for gas money. A.J. forcefully told J.R. to leave multiple times. J.R. had used methamphetamine that day, as he did every day.

As A.J. and J.R. stood in the garage, they noticed a truck speed down the street. They looked at each other because the truck was speeding by, they did not recognize the truck, and A.J. was concerned because J.R. had multiple enemies. The truck made a U-turn and raced back toward A.J.'s house. A.J. turned around and went deeper into the garage to get her cellphone and a weapon because she felt scared. Although she was facing the inside of her house and had her back to the driveway, she heard the truck pull up onto her lawn. A.J. faced toward the inside of her house for between 30 seconds and a minute and one- half; it took her a while to turn back around because her daughter had opened the door from the house to the garage, and A.J. told her to go back inside. She did not see anyone get out of the truck, and did not recall hearing any yelling. J.R. began yelling at her, and they argued before J.R. realized he was injured. The truck was speeding away. J.R. yelled at A.J. that "it was [defendant] that had did it." A.J. never saw J.R. with any weapon that day.

3

A.J.'s teenage daughter testified that she heard yelling and checked the garage. She saw A.J. and J.R. talking, and they were about to open the garage door. The daughter went back inside, but she continued to hear yelling and looked into the garage again. This time, the garage door was open, and a truck was in the driveway. Defendant got out of the truck and was halfway up the driveway, and A.J. yelled at her to shut the door. The daughter testified that A.J. and J.R. were yelling, although she had previously told law enforcement that A.J. was talking and yelling with defendant. The daughter complied with A.J.'s instruction to shut the door, after which J.R. entered the room holding his stomach, which was bleeding. J.R. yelled at the daughter to call the police, and then he went back into the garage. The daughter called and then went back into the garage, where A.J. and J.R. were arguing. She saw defendant get into the truck. She noticed that A.J. was facing defendant.

Defendant testified that J.R. was angry about his relationship with A.J., and he had argued with J.R. about that relationship. Defendant initially testified that the arguments were never threatening, but he later claimed that J.R. had threatened A.J. during the arguments.

According to defendant, on September 13, 2020, he and a friend drove to A.J.'s house to retrieve defendant's tools. When they pulled up to the house, defendant saw J.R. standing outside of the garage. He wondered why J.R. was at A.J.'s house, and felt hurt and disappointed. Defendant got out of the truck and then saw A.J. was also there. A.J. did not see him, and she started walking back inside. J.R. grabbed a baby sledgehammer, and they quickly approached each other. Defendant swiped at J.R. with a box cutter because J.R. was attacking him with the sledgehammer. J.R. appeared to be under the influence of methamphetamine. Defendant testified that he felt it was necessary to swipe at him with his blade "[t]o back [J.R.] up, because [defendant] knew what [J.R.] was gonna do and the damage it was going to do to [defendant]." Defendant

4

felt J.R. was attacking him because defendant had ended up in a relationship with A.J. Defendant later reasserted that he stabbed J.R. to protect himself.

On December 18, 2020, there was another altercation between defendant and J.R.; defendant fired multiple shots at a car being driven by J.R., and J.R. attempted to run defendant over with his car.[1] On January 9, 2021, law enforcement encountered defendant standing on the side of a residence near a broken window and found a loaded semiautomatic firearm in his waistband.

*Procedural History*

The jury found defendant guilty of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count two),[2] and two counts of felon in possession of a firearm (§ 29800, subd. (a)(1); counts six & seven) related to his firearm possession on December 18, 2020, and January 9, 2021. The jury further found true the allegations as to count two that defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)).

The trial court sentenced defendant to the middle term of three years in prison on count two, three years consecutive on the corresponding great bodily injury enhancement, and eight months (one-third the midterm) on count six. The court also sentenced defendant to the middle term of two years on count seven, to be served concurrent with count two.

We granted defendant's request for permission to file a notice of appeal under the constructive filing doctrine and deemed the notice of appeal timely. The case was fully briefed in April 2025 and assigned to the current panel the following month.

---

[1] The jury found defendant not guilty of multiple charges stemming from this incident.

[2] Further undesignated statutory references are to the Penal Code.

## DISCUSSION

### I

### *Defense of Others Evidence*

Defendant contends the trial court abused its discretion and denied his constitutional right to a fair trial when it excluded evidence of J.R.'s prior domestic violence against A.J., which he argues would have supported a "defense of others" defense. As we will explain, we find no abuse of discretion.

A. *Additional Procedural Background*

The prosecution's trial brief recounted A.J.'s statement to law enforcement after the stabbing. A.J. stated that J.R. had stayed at her house the night before the stabbing. On the evening of the stabbing, J.R. and A.J. walked outside as J.R. was leaving. As the two walked outside, a truck pulled into the driveway, A.J. ran back into her garage to get her phone, and then heard J.R. yell that he had been stabbed. The trial brief then summarized A.J.'s children's statements to law enforcement; they said that A.J. was yelling at defendant after J.R. was stabbed. Defendant's witness list and motions in limine included an introductory paragraph briefly setting out the facts of the case. It stated only that there was a confrontation between J.R. and defendant in A.J.'s driveway, and J.R. was stabbed during that dispute.

Defendant filed a pretrial motion in limine to admit evidence of J.R.'s prior convictions for impeachment purposes, including, as relevant here, a 2016 felony conviction for domestic violence (§ 273.5, subd. (a)). Defendant argued that each offense constituted a crime involving moral turpitude. He requested "to explore the underlying basis of the domestic violence conviction from 2016, because that was the incident between [J.R.] and [A.J.] that resulted in him going to prison and their relationship ending. Thereafter [A.J.] and [defendant] began dating, and upon his release [J.R.] became jealous of [defendant's] relationship with [A.J.]" Defendant argued admission of J.R.'s criminal history was necessary to allow the jury to evaluate J.R.'s credibility.

6

At a hearing on the motion, the prosecutor objected to evidence of J.R.'s domestic violence history as irrelevant. Defense counsel argued that A.J.'s domestic violence history with J.R. was relevant to J.R.'s credibility, given that J.R. had threatened to harm A.J. if she reported him to law enforcement, and A.J. was afraid of J.R. At the court's prompting, counsel also argued that the evidence was admissible to support a defense of others defense. Disagreeing, the prosecutor argued there was no evidence to suggest defendant acted in defense of others, and the evidence was irrelevant and highly prejudicial under Evidence Code section 352.[3]

The trial court acknowledged that the domestic violence history between J.R. and A.J. might be relevant to A.J.'s credibility and the timing of her decision to come forward, but asked defense counsel whether he agreed that there was nothing to suggest that defendant acted in defense of others. Counsel acknowledged: "Currently, yes, as far as the defense of others in the driveway, yes." The court excluded evidence of the history of domestic violence between J.R. and A.J., but agreed to revisit the issue if "some subset of that evidence" became relevant to A.J.'s credibility.

Defense counsel sought to clarify whether he could present evidence that J.R. was convicted of domestic violence, and that his relationship with A.J. ended when he went to prison. The prosecutor acknowledged that the conviction was admissible, but requested that it be sanitized by referring to it as a conviction for a crime involving moral turpitude. The trial court ordered the conviction to be sanitized, while allowing for the request to be revisited depending on A.J.'s testimony.

---

[3] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Defense counsel asked whether he could elicit testimony that J.R. went to prison for the crime involving moral turpitude, arguing that it was relevant to explain why J.R. came back into A.J.'s life and realized that she was now dating defendant. The prosecutor acknowledged the fact that J.R. left and came back was relevant, but argued the fact that he went to prison was highly prejudicial and should be excluded under Evidence Code section 352. The trial court concluded that the evidence was relevant, and though the relevance was marginal, the evidence would not have an unduly prejudicial effect. It ruled, "the conviction itself sanitized will come in, and the fact that he went to prison and came out will be admissible but . . . not the nature of the crime."

As we set forth *ante*, A.J. testified during direct examination that she and J.R. were suspicious of the truck that was speeding by because J.R. had enemies, and they did not know who was driving the truck. When she saw the truck do a U-turn and come back toward her house, A.J. went into her garage to get her cellphone and some sort of weapon because she was scared. She heard the truck drive up onto her lawn. After she grabbed her cellphone, J.R. began yelling at her, and they argued, before J.R. realized he was hurt. The truck was speeding off by the time she turned around.

After A.J.'s direct examination, defense counsel requested a sidebar, which was subsequently memorialized on the record. Defense counsel sought to elicit that A.J. had been the victim of J.R.'s prior domestic violence conviction, and that he had threatened her in the past and during the investigation in this case. Counsel believed there was sufficient testimony to admit that evidence for purposes of a defense of others defense. The prosecutor disputed that A.J.'s testimony had opened the door to such evidence because there was no testimony about an argument or physical altercation between her and J.R. prior to the stabbing that would justify introducing the evidence.

The trial court determined there was no evidence that J.R. threatened A.J. or any other evidence that would support permitting "a defense of others cross-examination . . ., that is to say to expand the examination of [A.J.] to talk about other relationship issues

8

between her and the alleged victim in this case."[4] The court continued to exclude the references to domestic violence under Evidence Code section 352 "as time consuming and confusing and prejudicial to the People's case in that there simply is no evidence of defense of others, at least at this point." The court reiterated that it would revisit its ruling if subsequent evidence established a foundation for a defense of others defense.

After the sidebar, A.J. testified that when she saw the truck drive by and ran into the garage to get her phone, J.R. stayed near the entrance to the garage. She did not turn around when she heard the truck drive on to her lawn because she was focused on getting her phone and a weapon. By the time she reached her phone, J.R. was in the middle of her garage. There was no yelling or screaming until after the vehicle left and J.R. had been injured. It took A.J. some time to turn around because she was telling her children-- who had opened the door to the garage--to go back inside the house. She clarified that she had an argument with J.R. that day, but only *after* the stabbing had occurred.

On cross-examination, A.J. testified that J.R. had "a lot of hate" toward her and had been very aggressive toward her, and was also jealous of her relationship with defendant. She testified, "he was just always mad at me, and every time he would see me he was trying to argue with me, and, umm, and he'd bang on my door and bust my door down at my house. I mean things like that. He was -- he was mean." A.J. added that J.R. was forceful in trying to be with her at that time. She had allowed J.R. to stay in her garage because he had nowhere else to go. At the time of the stabbing, A.J. was trying to get J.R. to leave her house because she was leaving, and he was "procrastinating." She told him multiple times to leave. She agreed that "it was a heated five minutes where [she was] trying to get him to leave."

---

[4] The trial court stated there was no evidence of a threat by *defendant* to A.J., but the court clearly intended to refer to the absence of evidence of a threat by *J.R.* to A.J.

9

At the conclusion of the presentation of evidence, the trial court determined that there was no basis for a defense of others instruction. The defense attorney (as well as the prosecutor) expressly agreed with the court as to that conclusion.[5]

B. *Legal Background*

" 'Except as otherwise provided by statute, no evidence is admissible except relevant evidence. (Evid. Code, § 350.) Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact . . . ." (*Id.*, § 210.) The trial court is vested with wide discretion in determining the relevance of evidence.' " (*People v. Williams* (2018) 23 Cal.App.5th 396, 416.)

Evidence Code section 352 gives the trial court the discretion to exclude collateral evidence if the probative value of the evidence is substantially outweighed by the probability its admission will create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226; *People v. Morrison* (2011) 199 Cal.App.4th 158, 164.)

We review the trial court's rulings on admission of evidence under Evidence Code section 352 for abuse of discretion. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1118.) " 'To establish an abuse of discretion, defendant[] must demonstrate that the trial court's decision was so erroneous that it "falls outside the bounds of reason." [Citations.] A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.] An abuse of discretion will be "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Miracle* (2018) 6 Cal.5th 318, 346-347.)

---

[5] Because the claim is error in declining to admit evidence of defense of others rather than failing to instruct the jury on that defense, we decline to find the claim forfeited, as defense counsel did seek to admit the evidence at issue on appeal during the trial.

10

We review the trial court's ruling based on matters as they were before that court at the time of the motion, not subsequently introduced evidence. (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1161.) However, because here the trial court agreed to revisit its initial ruling on the admissibility of the evidence based on evidence adduced at trial, and subsequently determined that the evidence continued to be inadmissible, we will analyze the evidence in the record at the time of the court's final ruling, which it rendered during trial after the prosecutor's direct examination of A.J.

C. *Analysis*

Defendant contends the trial court abused its discretion when it excluded evidence of J.R.'s history of domestic violence and threats against A.J.; he argues that the evidence would have established defendant's belief that A.J. and/or her children were at risk of harm at the time of the stabbing, supporting a defense of others instruction. We disagree.

The trial court is required to instruct the jury on an affirmative defense requested by a defendant if there is substantial evidence to support the instruction. (*People v. Stevenson* (1978) 79 Cal.App.3d 976, 985 ["When such an instruction is requested by the defendant, the trial judge's task is quite different from that required for *sua sponte* instructions. By the defendant requesting the instruction, the court knows that the defendant is relying on that defense. Its inquiry then focuses on the sufficiency of such evidence"]; *People v. Elize* (1999) 71 Cal.App.4th 605, 614 ["when evidence supports a defense and the defendant 'relies' on that defense and requests an instruction on it, the instruction should be given"].)

As defendant notes in detail, a defense of others defense requires (1) the defendant's reasonable belief that someone was in imminent danger of suffering bodily injury or of being touched unlawfully; (2) the defendant's reasonable belief that the use of force was necessary to defend against the danger; and that (3) the defendant used no more force than was reasonably necessary. (CALCRIM No. 3470.) Here, defendant primarily argues that the defense of others jury instruction would have informed the jury

11

that it could consider prior threats made, or harm inflicted, by J.R. in determining whether defendant's belief that A.J. was in imminent danger was reasonable. (See *ibid*.) But there was no substantial evidence that defendant believed--reasonably or unreasonably--that A.J. was in imminent danger of suffering bodily injury or of being touched unlawfully, or that he believed that the use of force was necessary to defend against the danger. Indeed, at the time of the hearing on the in limine motion, defense counsel *agreed* with the trial court that there was "nothing in the events as they play[ed] out that the Defendant could point to and say, this is why I did what I did because I was defending her." Nor had any such evidence been introduced at the time defense counsel renewed his request to introduce the evidence of J.R.'s domestic violence history. In other words, while evidence that J.R. had previously threatened and harmed A.J.--and defendant's knowledge that J.R. had done so--would have been relevant to the jury's determination of whether defendant *reasonably believed* that A.J. was in imminent danger of suffering bodily injury, and that the use of force was necessary to defend against the danger, that evidence was irrelevant where there was no evidence that defendant even *believed* that A.J. was in imminent danger, whether such belief would have been reasonable or not. In the absence of any such evidence, whether J.R. had a history of domestic violence is irrelevant.

Defendant points to the fact that J.R. was refusing to leave A.J.'s house, and that the two had argued before defendant arrived at the house. But there is no evidence that defendant witnessed any purported refusal to leave or argument that occurred prior to his arrival. Defendant did not claim to have witnessed any altercation during his testimony, and did not claim to be defending A.J. As we have set forth *ante*, he claimed only to be defending himself against an unprovoked attack by J.R. And as we have described, the evidence showed that at the precise time of defendant's arrival, J.R. and A.J. were not even standing together, much less arguing. There is simply no evidence, let alone substantial evidence, that defendant believed A.J. was in imminent danger of suffering

12

bodily injury or of being touched unlawfully. The trial court did not abuse its discretion by excluding evidence of J.R.'s history of domestic violence against A.J., as that evidence was irrelevant given the absence of evidence that defendant was acting in defense of A.J. when he stabbed J.R.

## II

### *Domestic Violence Conviction Claim*

Defendant next contends the trial court abused its discretion by excluding evidence of J.R.'s threats against A.J. and her family and acts of domestic violence against A.J., which he argues were relevant to impeach J.R.'s credibility.

In determining the credibility of a witness, the jury may consider "[h]is character for honesty and veracity or their opposites" (Evid. Code, § 780, subd. (e)), and a witness's prior felony convictions are admissible to attack his credibility (*id.*, § 788). However, a court may exercise its discretion under Evidence Code section 352 to exclude evidence of prior convictions or, as the trial court did here, to sanitize the descriptions of prior convictions where the nature of the unsanitized prior convictions would be more prejudicial than probative of the witness's credibility. (*People v. Dalton* (2019) 7 Cal.5th 166, 214; *People v. Castro* (1985) 38 Cal.3d 301, 305-306; *People v. Massey* (1987) 192 Cal.App.3d 819, 825.) We review such rulings for abuse of discretion. (*People v. Hinton* (2006) 37 Cal.4th 839, 887-888.)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) The first two factors are weighed against the probability of (a) necessitating undue time consumption time, or (b) creating " ' "substantial danger of undue prejudice, confusing the issues, or misleading the jury." ' " (*People v. Holt* (1984) 37 Cal.3d 436, 452-453.)

The final two factors have no application here, because we are concerned with a non-defendant witness.

Defendant argues that J.R.'s veracity was at the heart of the case against him, and the trial court's decision to exclude the evidence was a failure to act in accordance with sound principles of law, and therefore "may only be viewed as arbitrary." But defendant fails to demonstrate that the court's decision was an abuse of discretion. The court allowed defendant to introduce evidence that J.R. was convicted of receiving a stolen car in 2012 and a crime of moral turpitude in 2016, after which he served two years in prison. By sanitizing the prior domestic violence conviction, the court protected defendant's ability to attack J.R.'s credibility while also avoiding the potential prejudice of inflammatory information on a collateral matter. (See *People v. Massey, supra*, 192 Cal.App.3d at p. 825 [court may properly sanitize a prior conviction to reduce the prejudicial effect of its admission].) Additionally, defendant testified that J.R. had previously threatened both him and A.J. For her part, A.J. testified that J.R. had a lot of hate toward her, had acted aggressively towards her in the past, was jealous of her relationship with defendant, and would "bang on my door and bust my door down at my house." Thus, there is no indication that J.R. benefited from a false aura of credibility (see *People v. Beagle* (1972) 6 Cal.3d 441, 453), and there is nothing to suggest that the court was unaware of the scope of its discretion or that it abused its discretion by excluding evidence of the nature of J.R.'s prior conviction and the specifics of his prior threats against A.J. and her family.

III

*Sentencing Claim*

Finally, defendant contends the trial court abused its discretion by imposing the middle term at sentencing because it misrepresented his criminal history and failed to address or properly consider applicable mitigating factors. Again, we disagree.[6]

A. *Background*

The probation report recommended that the trial court sentence defendant to nine years four months in prison. The report listed eight aggravating factors, including that the crime involved great violence or great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)),[7] defendant was armed with or used a weapon at the time of the commission of the crime (rule 4.421(a)(2)), defendant's prior convictions were numerous and of increasing seriousness (rule 4.421(b)(2)), and defendant had served prior prison terms (rule 4.421(b)(3)). The report reflected that defendant had 10 prior convictions, seven of which were felonies.[8] The report identified a single mitigating factor: multiple enhancements had been alleged in the case. (Rule 4.423(b)(11).)

---

[6] The Attorney General argues that defendant forfeited his claim on appeal by failing to object at sentencing. We will address defendant's claim on the merits, as it clearly fails to persuade.

[7] Further rule references are to the California Rules of Court.

[8] In 1994, defendant was placed on probation after he was convicted of felony possession of a firearm in a school zone (Pen. Code, § 626.9, subd. (b)); he violated probation twice. In 1996, he was again placed on probation after he was convicted of felony possession of a controlled substance. (Health & Saf. Code, § 11350.) In 1999, his probation was terminated after he was convicted of felony possession of cocaine base for sale (*id.*, § 11351.5), and was sentenced to seven years in prison. In 2005, he was convicted of felony furnishing a controlled substance (*id.*, § 11352, subd. (a)), and sentenced to three years in prison. Upon his release, he violated parole and was returned to prison to finish his term. In 2009, he was convicted of misdemeanor driving under the influence of alcohol. (Veh. Code, § 23152, subds. (a), (b).) In 2013 and 2014, he was convicted of felony vehicle theft (*id.*, § 10851, subd. (a)) and felony possession of a

15

Defendant's sentencing brief urged the trial court to impose the low term on the assault count, strike the deadly weapon enhancement, and impose concurrent sentences on the felon in possession of a firearm counts.  In mitigation, defendant argued that J.R. was the aggressor and provoked the conduct underlying the assault (rule 4.423(a)(2)), defendant acted in lawful self-defense and used restraint by only swiping at J.R. (rule 4.423(a)(4), (a)(6), & (a)(7)), and no further violence was likely to occur because defendant was no longer in a relationship with A.J. (rule 4.423(a)(3)).  Defendant added that he had no prior record of violence (rule 4.423(b)(1)), and multiple enhancements were alleged in the case (rule 4.423(b)(11)).

Defendant further argued that the absence of aggravating factors warranted imposition of the low term.  He noted there were no aggravating factors except that he was armed with a weapon (rule 4.421(a)(1)) and inflicted great bodily injury (rule 4.421(a)(2)).  He observed the other aggravating factors referenced by the probation report were neither admitted nor proven at trial.  (See § 1170, subd. (b) [prohibiting imposition of upper term based on aggravating factors not admitted or found true by the jury beyond a reasonable doubt].)

At the sentencing hearing, the court stated that it had read and considered defendant's sentencing brief.  Defendant reiterated his arguments with an emphasis on the mitigating factors.  The prosecutor agreed that the aggravating factors relied upon by the probation report had not been proven at trial as required to impose the upper term under section 1170, subdivision (b).  The prosecutor also indicated that the deadly weapon enhancement could not be imposed on the assault count because it was an

controlled substance (Health & Saf. Code, § 11377, subd. (a)), both of which were followed by violations of his supervision.  In 2015 and 2016, he was convicted of misdemeanor passing a bad check and unauthorized possession of prescription drugs (Pen. Code, § 476; Health & Saf. Code, § 11377, subd. (a)), and petty theft (Pen. Code, § 484).  In 2019, he was convicted of felony vandalism (§ 594, subd. (a)), after which he again violated his probation.

element of assault with a deadly weapon. The prosecutor argued that the middle term on the assault count, and an aggregate sentence of seven years four months, was appropriate due to the facts of the case and defendant's criminal history, which included "numerous jail behavior write-ups, one being a major incident where he was in a mutual fight with another inmate," demonstrating a continuous willful violation of the law and failure to follow directions.

The trial court observed that defendant had not previously committed a violent offense, but noted, "you just keep [committing] one felony after another. You know, you're making a career out of this, and it is dismaying to the Court." The court then imposed the middle term on the assault count; it determined the upper term was not warranted because the aggravating factors had not been pleaded and proven, and the lower term was not appropriate given defendant's "almost endless history of intersection with the criminal justice system."

B. *Legal Background*

The trial court enjoys broad discretion in selecting the term of imprisonment, although certain requirements have been recently added that apply to a sentence exceeding the middle term. (See § 1170, subd. (b)(1) & (2).) The trial court's sentencing decisions are reviewed for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) An abuse of that discretion occurs if the court "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) Defendant bears the burden to " 'show that the sentencing decision was irrational or arbitrary' " to have their sentence set aside on review. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

C. *Analysis*

Defendant argues the trial court abused its discretion by misrepresenting his criminal history as a chain of "one felony after another," observing that he committed

17

only four felonies in the past 20 years. He adds that the court failed to consider the mitigating circumstances he raised in his sentencing brief.

Defendant has not demonstrated reversible error. First, there is nothing to suggest that the trial court did not consider the mitigating circumstances defendant raised in his sentencing brief. The court stated that it had read and considered the brief, and there is nothing to suggest that the court did not consider the arguments defense counsel raised during the sentencing hearing.

Second, there is nothing to suggest that the trial court imposed the middle term on the assault count based on a misimpression of his criminal record. Again, the court stated that it had considered the presentence report and it acknowledged that defendant had not been convicted of a violent crime. While defendant focuses on the court's statement that he "just keep[s] [committing] one felony after another," that statement when taken in context does not suggest that the court imposed the middle term based on anything other than an accurate understanding of defendant's criminal record.

## DISPOSITION

The judgment is affirmed.

/s/
_____
Duarte, J.

We concur:


/s/
_____
Mauro, Acting P. J.



/s/
_____
Renner, J.

18